

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

# 05...10354 DPW

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MAGISTRATE JUDGE_____

KIMBERLY STOYLE,

                Plaintiff    \*

                        \*

Vs.                       \*

                        \*     Civil Action No.

THE MANSFIELD MUNICIPAL ELECTRIC    \*
DEPARTMENT, JOHN D'AGOSTINO,       \*
TOWN OF MANSFIELD BOARD OF        \*
LIGHT COMMISSIONERS, LOUIS AMORUSO,   \*
MICHAEL McCUE, DAVID McCARTER,      \*
DANIEL DONOVAN, ROGER ACHILLE       \*
and STEVEN MacCAFFRIE,             \*

                        \*

               Defendants    \*

                        \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RECEIPT #_____
AMOUNT $250_____
SUMMONS ISSUED yes
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE 2|23|05_____

## VERIFIED COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff, Kimberly Stoyle ("Ms. Stoyle") brings this action against defendants, Mansfield Municipal Electric Department ("MMED") and John D'Agostino ("Mr. D'Agostino"), to recover damages arising out of their violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 *et seq.* ("Title VII"); 42 U.S.C. § 1983; M.G.L. c 151B § 4(4), M.G.L. c 149 § 185, M.G.L. c. 12 §§ 11H and 11I, tortious interference with advantageous relations, constructive discharge and intentional infliction of emotional distress. Further, Ms. Stoyle brings this action against the defendants the Town of Mansfield Board of Light Commissioners, David McCarter, Louis Amoruso, Michael McCue, Roger Achille, Steven MacCaffrie and Daniel Donovan (collectively "the Board") for aiding and abetting in unlawful conduct and for their negligent supervision and retention of Mr. D'Agostino.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f), as this case raises questions of federal law.  This Court further has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that defendants are and were at all relevant times residing or doing business in Massachusetts, and a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts.

## PROCEDURAL HISTORY

3. On December 5, 2002, the Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") charging the Town of Mansfield, the Mansfield Municipal Electric Department ("MMED") and John D'Agostino with discrimination against the Plaintiff in employment on the basis of gender and retaliation. On December 22, 2004, Plaintiff's MCAD and EEOC claims were removed for the purpose of filing a civil action in the same matter in court.

4. On June 1, 2004, the Plaintiff filed a second Charge of Discrimination with the MCAD and the EEOC charging the Board of Light Commissioners ("the Board") Daniel Donovan, Louis Amoruso, Michael McCue and David McCarter with retaliation and aiding and abetting discrimination.  On February 17, 2005, Plaintiff's MCAD and EEOC claims were removed for the purpose of filing a civil action in the same matter in court.

## PARTIES

5. Ms. Stoyle is an individual residing at 138 Old Elm Street, Mansfield, Bristol County, Massachusetts.

6. MMED is a municipal subdivision organized under M.G.L. c. 164 located in Mansfield, Bristol County, Massachusetts. At all relevant times, MMED was an employer within the meaning of Title VII and M.G.L. c. 151B.

7. Mr. D'Agostino is an individual residing at 12 Park Avenue, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. D'Agostino was the Town of Mansfield's Town Manger, Manager of MMED and Ms. Stoyle's superior.

8. The Town of Mansfield Board of Light Commissioners is a municipal board located in Mansfield, Bristol County, Massachusetts. The Board has supervisory control over MMED and Mr. D'Agostino.

9. David McCarter is an individual residing at 152 Dean Street, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. McCarter was a member of the Board.

10. Louis Amoruso is an individual residing at 6 Brookside Road, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. Amoruso was a member of the Board.

11. Michael McCue is an individual residing at 475 Williams Street, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. McCue was a member of the Board.

12. Roger Achille is an individual residing at 44 Warren Avenue, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. Achille was a member of the Board.

13. Steven MacCaffrie is an individual residing at 236 Mill Street, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. MacCaffrie was a member of the Board.

14. Daniel Donovan is an individual residing at 97 Court Street, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. Donovan was a member of the Board.

## FACTS

15. Ms. Stoyle is a forty-one year old single mother of three children. She holds a Bachelor of Science Degree in Finance from Bentley College.

16. On March 8, 1999, then MMED Director Jack Beliveau ("Mr. Beliveau") hired Ms. Stoyle as Comptroller/Accounting Officer. Shortly thereafter, Mr. Beliveau changed Ms. Stoyle's job title to Chief Financial Officer to more accurately reflect her job description.

17. Ms. Stoyle's job description includes *inter alia* major responsibility for MMED financial operations as follows: Develop long range plans and policy objectives to assure compliance with all applicable laws of the Commonwealth as they pertain to the financial operations of MMED; coordinate all financial operations of MMED with the Town Treasurer and Accountant in accordance with applicable laws and policy; develop and maintain separation of function procedures and controls to minimize errors or misappropriation; maintain accounting and financial records; and reconcile all transactions with the Town Treasurer and Accountant. Ms. Stoyle reviewed and authorized payment for MMED expenditures including services rendered to MMED by the Town.

18. At all times relevant hereto, Bea Kearney ("Ms. Kearney") was the Town Accountant and Richard Boucher ("Mr. Boucher") was the Town Treasurer.

4

19. The Town Accountant and the Town Treasurer report directly to Mr. D'Agostino. As the Town Manager, Mr. D'Agostino is ultimately responsible for the Town's financial operations and decision-making.

20. Throughout her tenure at MMED, Ms. Stoyle routinely complained to Mr. Beliveau, Ms. Kearney, Mr. Boucher, Mr. D'Agostino and to the Board regarding the illegal misappropriation of MMED funds, including but not limited to the incidents set forth below.

21. In June 1999, during a meeting with Ms. Kearney, Mr. Boucher and Mr. D'Agostino, Ms. Stoyle questioned a bill submitted by the Town for treasurer's services in the amount of approximately $150,000. The bill for treasurer's services included only the processing of electric payments. Ms. Stoyle voiced her concern that the amount charged was excessive for the service rendered. Ms. Stoyle believed that it was illegal to authorize payment for charges not legitimately incurred. Mr. D'Agostino assured Ms. Stoyle that the charges were actual charges.

22. In February 2000, Ms. Stoyle complained verbally and in writing that Mr. D'Agostino unlawfully exerted his influence over the hiring of a financial assistant at MMED in violation of state law. During a meeting to discuss the hiring issue, Mr. D'Agostino questioned Ms. Stoyle's work performance and acted in a hostile manner toward her.

23. In June 2000, during a meeting with Ms. Kearney, Mr. Boucher and Mr. D'Agostino, Ms. Stoyle again questioned overcharges for treasurer's services in the amount of approximately $133,000. The bill for treasurer's services included only the processing of electric bills. Again, Mr. D'Agostino assured Ms. Stoyle that the charges were actual charges for services rendered.

24. In June 2001, Ms. Stoyle solicited a quote from Century Bank to outsource the treasurer's services for the 2001-2002 fiscal year. Century Bank quoted Ms. Stoyle a fee of $18,000 to perform the same services that the Town Treasurer performed at an average yearly cost of approximately $140,000. During a roundtable discussion with Century Bank representatives on this issue, Mr. Boucher told Ms. Stoyle to "shut up" and that she didn't know anything. Mr. D'Agostino was also present and acquiesced in Mr. Boucher's hostile treatment of Ms. Stoyle. Ms. Stoyle later presented Century Bank's proposal to the Board.

25. In June 2001, during a meeting with Mr. Beliveau, Mr. D'Agostino, Ms. Kearney and Ms. Stoyle, the Town Treasurer admitted that "It really didn't' cost that much to process the electric bills" and that the Town had been overcharging MMED for his services. When asked what it really costs, Mr. Boucher quoted between $20,000 and $40,000. Ms. Stoyle believed the inflated charges were illegal, and she refused to pay the bill. MMED was never reimbursed for the overcharges for the several years prior to this revelation.

26. In or about October 2001, Ms. Stoyle and Mr. Beliveau reported to Mr. Amoruso that Mr. D'Agostino had engaged in sexually offensive conduct toward Ms. Stoyle. A meeting was held with Mr. Amoruso, Mr. Beliveau and others to discuss Mr. D'Agostino's behavior. At this meeting, Mr. Beliveau reported sexual harassment of Ms. Stoyle and of another town employee by Mr. D'Agostino. Mr. Beliveau and Mr. Amoruso subsequently met with Mr. D'Agostino regarding Ms. Stoyle's concerns. Mr. Amoruso acknowledged that Mr. D'Agostino's behavior was inappropriate, but no action was taken to remedy the situation.

27. In late December 2001, Mr. D'Agostino attempted to rescind Ms. Stoyle's pay raise, which had been pre-approved on December 11, 2001. Mr. D'Agostino continued to question Ms. Stoyle's compensation and employment status for several months thereafter. He scrutinized her personnel file, singled her out regarding the approval process for prior pay raises and questioned her job title and the date of her job application. Mr. D'Agostino also began referring to Ms. Stoyle as the Office Manager instead of the Chief Financial Officer.

28. In February 2002, Ms. Stoyle complained again to Mr. Beliveau and Mr. Amoruso about Mr. D'Agostino's behavior and the escalating hostile work environment.

29. In April 2002, during a meeting with Ms. Kearney, Mr. Boucher and Mr. D'Agostino, Ms. Stoyle questioned pension allocations charged to MMED by the Town. Ms. Stoyle indicated that the formula used to calculate the pension allocation was inconsistent with the method used by every other municipality in the state and with accepted accounting principles. Ms. Stoyle stated that she believed MMED was being illegally overcharged by approximately $70,000 per year and asked Mr. D'Agostino why no accounting principles were used in the calculation. Mr. D'Agostino responded, "The only accounting I know is a broad plus a brain equal a problem."

30. In June 2002, Mr. D'Agostino approved the overcharge to MMED for pension allocations. At the same time, Ms. Stoyle suspected that the Town's bill to MMED for health insurance costs was also inflated. These overcharges were discussed at the June 2002 Board meeting. As a result of the meeting, Ms. Stoyle delayed payment until September 3, 2002, pending a detailed explanation of the inaccuracies she identified. In June 2002, Ms. Kearney transferred $869,000 from MMED, despite that it was not

authorized for payment until September 3, 2002. Ms. Stoyle believed that the

overcharges and the transfer were illegal acts. MMED was never credited for these or

prior years' overcharges.

31. In June 2002, in response to Ms. Stoyle's complaints regarding overcharges, Mr.

D'Agostino told Ms. Stoyle that she was too pretty and that no one would take her

seriously; that maybe people would listen to her if she cut her hair and got fat; and that

she should have been a hairdresser because then she could talk as much as she wanted

and maybe someone would listen.

32. In August 2002, at a conference for the Northeast Public Power Association, Mr.

D'Agostino told Ms. Stoyle that she "looked delicious." Mr. D'Agostino whispered this

comment in Ms. Stoyle's ear, as he stood uncomfortably close to her. Ms. Stoyle

rebuffed his advance calling him a pig.

33. In October 2002, D'Agostino began a series of contrived accusations against Ms. Stoyle.

He alleged that she authorized the installation of a purchase order software upgrade

without prior approval from or coordination with the Town MIS manager. In fact, no

such software upgrade had ever been installed.

34. In October 2002, Mr. D'Agostino also requested information regarding telephone records

from Ms. Stoyle and then purposely ignored and/or misconstrued all attempts by Ms.

Stoyle to reasonably respond to his inquiry. Mr. D'Agostino obviously intended to create

the appearance that Ms. Stoyle was insubordinate by refusing to comply with his request.

35. In October 2002, Ms. Stoyle requested another meeting with Mr. Amoruso to discuss the

continuing hostile environment that Mr. D'Agostino created. On October 17, 2002, Ms.

Stoyle, Mr. Beliveau and Mr. Amoruso met at MMED offices. The focus of the

discussion was sexual harassment and retaliation against Ms. Stoyle. Again, no action was taken to remedy the situation.

36. In November 2002, Mr. D'Agostino recommended that Mr. Beliveau take disciplinary action against Ms. Stoyle, despite that she had fully complied with his requests.

37. On December 5, 2002, Ms. Stoyle filed a Charge of Discrimination with the MCAD in which she accused Mr. D'Agostino of gender-based harassment, sexual harassment and retaliation. On January 10, 2003, Mr. D'Agostino publicly threatened to sue employees as a result of Ms. Stoyle's charge. Upon information and belief, Ms. Stoyle was one of the employees he was threatening to sue.

38. On December 24, 2002, Mr. McCarter stated to former Mansfield Selectman Brad Wills that Ms. Stoyle "should be fired for insubordination" for filing a charge against the Town. McCarter then bragged that he "could lie with a straight face under oath." Mr. McCarter's statements preceded any internal investigation into Ms. Stoyle's charges.

39. In January 2003, Mr. Donovan stated publicly that Ms. Stoyle's discrimination charges were "far-fetched" and "a fabrication." Mr. Donovan's statements were also made prior to the initiation of any internal investigation regarding the matter.

40. In February 2003, the Town Treasurer and the Town Accountant issued a memorandum falsely accusing Ms. Stoyle of substantial overdrafts in the MMED financial account over a period of nine months and unidentified discrepancies between the cash of MMED and the Town. These allegations were a direct attack on Ms. Stoyle's competence as Chief Financial Officer and fabricated to discredit her. As a result of the memorandum, Mr. Beliveau hired James Goulet ("Mr. Goulet") to audit the financial accounts of MMED.

41. In June 2003, Mr. Goulet requested copies of the Town audits for 2001-2003 for purposes of his investigation. Mr. D'Agostino intentionally delayed the production of documents requested by the auditor.

42. In July 2003, the Town attempted to bill MMED for 25% of the Town's GIS Manager's salary, despite a prior vote that all GIS related charges would be covered in the payment in lieu of taxes. Ms. Stoyle complained that the Town was triple dipping into MMED funds by attempting to recover the GIS salary under three different methods.

43. In July 2003, Ms. Stoyle notified the Town Accountant that expenditures by Mr. D'Agostino on an MMED issued American Express card were unrelated to MMED business and therefore illegal. Upon information and belief, this had been a practice of Mr. D'Agostino's for several years prior and continued throughout Ms. Stoyle's employment. Ms. Stoyle suggested that Ms. Kearney familiarize herself with the Inspector General's Report regarding the Reading Municipal Light Department. Ms. Kearney was unaffected by this disclosure, despite that she was responsible for approving the charges for payment.

44. In July 2003, Ms. Stoyle notified the Board in writing that Mr. D'Agostino was fraudulently charging MMED for Town services and that he was engaged in ongoing sexual harassment and retaliation against her. In August 2003, Ms. Stoyle also notified the Massachusetts Office of the Inspector General in writing regarding the misappropriation of public funds.

45. On August 26, 2003, the Board received written notice from Mr. Beliveau that sexual harassment and retaliation against Ms. Stoyle was ongoing. No investigation was undertaken.

46. In December 2003, Mr. Goulet's audit concluded that there was a timing difference between the recording of cash between MMED and the Town and that there was no misallocation or misuse of funds. Ms. Stoyle was cleared of all charges. The Town Accountant acknowledged that she had been aware of the timing difference before accusing Ms. Stoyle of overdrafts. Mr. D'Agostino fired the auditor upon receipt of his conclusions.

47. In January 2004, D'Agostino rejected Ms. Stoyle's application to become a member of the Professional Union on the basis that Ms. Stoyle was privy to confidential financial information. At this time, D'Agostino was aware that the Town Accountant and the Town Treasurer, who had access to similar financial information, were already members of a union. In April 2004, Ms. Stoyle successfully appealed the denial before the Massachusetts Labor Relations Commission.

48. Jack Beliveau was the Director of MMED at the time Ms. Stoyle was hired until February 12, 2004. During his tenure at MMED, Mr. Beliveau was aware and agreed with Ms. Stoyle that the Town was fraudulently overcharging MMED for internal expenses. Mr. Beliveau also corroborated Ms. Stoyle's complaints of sexual harassment and retaliation. Mr. D'Agostino terminated Beliveau on February 12, 2004.

49. In May 2004, Mr. D'Agostino hired Gary Babin as the new MMED Director. Mr. Babin informed Ms. Stoyle that he was hired to "change things" and that he was now "running the show." Ms. Stoyle responded that she never wanted to run the show and that she only wanted to be allowed to do an honest job. Mr. Babin immediately diminished Ms. Stoyle's rank as Chief Financial Officer by eliminating her major job responsibilities. Ms. Stoyle was excluded from all meetings, discussions and decisions concerning the

financial operations of MMED.  Mr. Babin reduced her financial report from fourteen pages to two pages and ordered Ms. Stoyle to sit in the audience at Board meetings rather than with the Board and other Town officials, as she had in the past.  Mr. Babin told Ms. Stoyle, "You better get used to the fact that your job is changing."

50. In June 2004, Mr. D'Agostino reinstated the Town's illegal practices of overcharging MMED for pension costs and GIS services.  The total internal services bill increased by approximately $300,000.  Ms. Stoyle complained about the overcharges to Mr. Babin and to the Town Accountant.  Mr. D'Agostino directed MMED to pay the overcharges, despite a prior vote by the Board in November 2001 to pay only actual expenses incurred.  All others would be included in the cash payment in lieu of taxes.

51. In June 2004, Ms. Stoyle discovered that the Treasurer was illegally borrowing money from MMED's Depreciation Fund.  On November 7, 2002, the Town "borrowed" $800,000 without notice to MMED.  On November 21, 2002, the Town borrowed an additional $550,000.  Ms. Stoyle believed that this was an illegal practice.  Ms. Stoyle brought this to the attention of Mr. Babin.

52. In June 2004, Mr. Boucher attended a Treasurer and Collector's Conference also attended by Brian Feeney of Century Bank.  Mr. Boucher asked Mr. Feeney if he heard that the MMED Director was fired.  He then stated, "The bitch is next."  Mr. Boucher admitted that he was referring to Ms. Stoyle.

53. In September 2004, Ms. Stoyle questioned American Express credit card expenditures by Mr. D'Agostino that she believed were unrelated to MMED business.

54. In or about September 2004, Ms. Stoyle again complained that Mr. D'Agostino was illegally exerting his influence over the hiring process for financial assistant.

55. On or about January 10, 2005, Ms. Stoyle notified Union organizer Steve O'Donnell that

    she believed her job was being diminished, that she was not involved in meetings,

    discussions and decisions relating to MMED financial operations and that she could not

    successfully perform her job.

56. On the morning of January 18, 2005, Mr. O'Donnell related Ms. Stoyle's concerns to Mr.

    Babin. Mr. Babin stated his intent was to reduce Ms. Stoyle's position and to cut her pay.

    Mr. Babin indicated that he was "uncomfortable with Ms. Stoyle's salary." On the

    afternoon of January 18, 2005, Ms. Stoyle resigned her position as Chief Financial

    Officer. On the evening of January 18, 2005, Town counsel threatened to withhold Ms.

    Stoyle's final paycheck if she did not submit a formal letter of resignation.

57. The Board has supervisory control of MMED and Mr. D'Agostino in his role as Manager

    of MMED. The Board had knowledge of Ms. Stoyle's protected activities, but failed to

    investigate Mr. D'Agostino's continued harassment and retaliation against her.

58. The Board remained deliberately indifferent to Mr. D'Agostino's retaliation against Ms.

    Stoyle, despite that Ms. Stoyle was engaging in legally protected conduct. The Board's

    indifference permitted Mr. D'Agostino's harassment and retaliation against Ms. Stoyle to

    escalate resulting in her constructive discharge.

## COUNT I

### Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. § 2000e-3 *et. seq.* - Retaliation
### (Ms. Stoyle v. MMED and D'Agostino)

59. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 58 above as if fully

    set forth herein.

60. Ms. Stoyle timely met the administrative prerequisites to suit under Title VII.

61. Ms. Stoyle engaged in protected conduct under Title VII by *inter alia* complaining about sexual harassment and retaliation.

62. The defendants were aware that Ms. Stoyle engaged in protected activity.

63. Ms. Stoyle was subject to adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination and constructive discharge.

64. Said adverse employment actions were causally connected to Ms. Stoyle's protected activity.

65. As a direct result of such adverse action, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT II

### M.G.L. c. 151B, §4(4) - Retaliation
### (Ms. Stoyle v. MMED and D'Agostino)

66. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 65 above as if fully set forth herein.

67. Ms. Stoyle timely satisfied the administrative prerequisites to a court action under M.G.L. c. 151B.

68. Ms. Stoyle engaged in protected conduct under M.G.L. c. 151B by *inter alia* complaining about sexual harassment and retaliation.

69. The defendants were aware that Ms. Stoyle engaged in protected activity.

70. Ms. Stoyle was subject to adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination and constructive discharge.

71. Said adverse employment actions were causally connected to Ms. Stoyle's protected activity.

72. As a direct result of such adverse action, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.


## COUNT III

### Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. § 2000e-3 *et. seq.* - Aiding and Abetting
### (Ms. Stoyle v. Board of Light Commissioners, Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven McCaffrie)

73. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 72 above as if fully set forth herein.

74. The Board of Light Commissioners has supervisory control of MMED and Mr. D'Agostino in his role as Manager of MMED.

75. The Board, through its acts and omissions in failing to investigate and prevent continued known harassment and retaliation against Ms. Stoyle, aided and abetted in conduct forbidden by Title VII.

76. As a direct cause of defendants' conduct, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT IV

### M.G.L. c. 151B, §4(5) - Aiding and Abetting
### (Ms. Stoyle v. Board of Light Commissioners, Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven McCaffrie)

77. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 76 above as if fully set forth herein.

78. The Board of Light Commissioners has supervisory control of MMED and Mr. D'Agostino in his role as Manager of MMED.

79. The Board, through its acts and omissions in failing to investigate and prevent continued known harassment and retaliation against Ms. Stoyle, aided and abetted in conduct forbidden by M.G.L. c. 151B.

80. As a direct cause of defendants' conduct, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT V

### M.G.L. C. 149, §185 - Whistleblower Statute
### (Ms. Stoyle v. MMED and D'Agostino)

81. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 80 above as if fully set forth herein.

82. Ms. Stoyle disclosed and/or threatened to disclose to a supervisor and to a public body practices that Ms. Stoyle reasonably believed were in violation of law.

83. Ms. Stoyle reported the conduct that she reasonably believed was in violation of law to the attention of defendants in writing.

84. Ms. Stoyle was subject to adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination and constructive discharge.

85. As a direct result of such adverse action, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT VI

### 42 U.S.C. 1983
### (Ms. Stoyle v. MMED and D'Agostino)

86. Plaintiff hereby realleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

87. Plaintiff complained verbally and in writing about illegal hiring practices, misappropriation of public funds, sexual harassment and retaliation. Plaintiff's complaints involve matters of public concern.

88. At all times material to this Complaint, defendants were acting under color of federal and state laws, statutes, ordinances, codes and regulations while depriving the Plaintiff of her constitutional right to free speech and the right to be free from sexual harassment.

89. Ms. Stoyle was subject to adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination and constructive discharge.

90. As a direct result of such adverse action, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT VII

### M.G.L. c. 12 §§ H, I - Civil Rights Act
### (Ms. Stoyle v. MMED and D'Agostino)

91. Plaintiff hereby realleges and incorporates Paragraphs 1 through 90 above as if fully set forth herein.

92. Plaintiff complained verbally and in writing about illegal hiring practices, misappropriation of public funds, sexual harassment and retaliation.

93. The defendants, through coercion, intimidation and threats, attempted to interfere with Ms. Stoyle's right to free speech and right to be free from sexual harassment.

94. Ms. Stoyle was subject to adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threat of disciplinary action, threat to retract of her pay raise and threat of termination. Such adverse employment action resulted in her constructive discharge.

95. As a direct result of such adverse action, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT VIII

### Constructive Discharge
### (Ms. Stoyle v. MMED and D'Agostino)

96. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 95 above as if fully set forth herein.

97. Ms. Stoyle was an executive employee engaged to fill the position of Chief Financial Officer. She suffered a material change in job duties and rank tantamount to a constructive discharge.

98. Ms. Stoyle was subject to adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination.

99. Ms. Stoyle's working conditions became so intolerable that any reasonable person in her situation would have felt compelled to resign.

100.    As a direct and proximate cause of her constructive discharge, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT IX

### Wrongful Termination
### (Ms. Stoyle v. MMED and D'Agostino)

101.    The Plaintiff hereby realleges and incorporates Paragraphs 1 through 100 above

as if fully set forth herein.

102.  Ms. Stoyle was constructively terminated from her position as Chief Financial Officer

of MMED in violation of a clearly defined public policy to wit complaining about illegal

hiring practices, misappropriation of public funds, sexual harassment and retaliation.

103.  As a direct and proximate cause of her constructive discharge, Ms. Stoyle has suffered

and continues to suffer damages including but not limited to physical and emotional distress,

loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT X

### Intentional Infliction of Emotional Distress
### (Ms. Stoyle v. MMED and D'Agostino)

104.  Plaintiff hereby realleges and incorporates Paragraphs 1 through 103 above as if fully

set forth herein.

105.  The conduct of the defendants as set forth above was extreme and outrageous, beyond

all possible bounds of decency and utterly intolerable in a civilized community.'

106.  Ms. Stoyle has suffered severe emotional distress as a result of the defendants' extreme

and outrageous actions.

107.  As a direct cause of defendants' conduct, Ms. Stoyle has suffered and continues to

suffer damages including but not limited to physical and emotional distress, loss of

professional reputation, loss of pension benefits and other financial losses.

## COUNT XI

### Tortious Interference with Advantageous Relations
### (Ms. Stoyle v. D'Agostino)

108. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 107 above as if fully set forth herein.

109. Mr. D'Agostino was aware of Ms. Stoyle's existing advantageous businesses relationship with MMED as set forth above.

110. Mr. D'Agostino, with improper motive and/or through the use of improper means, intentionally interfered with Ms. Stoyle's advantageous business relationship with MMED.

111. As a direct cause of the conduct alleged herein, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.

## COUNT XII

### Negligent Retention/Supervision
### (Ms. Stoyle v. Board of Light Commissioners, Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven McCaffrie)

112. The Plaintiff hereby realleges and incorporates Paragraphs 1 through 111 above as if fully set forth herein.

113. The Board of Light Commissioners has supervisory control of MMED and Mr. D'Agostino in his role as Manager of MMED. As such, the Board owed Ms. Stoyle a duty to exercise reasonable care in retaining and supervising Mr. D'Agostino as an employee.

114. The Board's acts and omissions in failing to investigate and prevent continued known retaliation against Ms. Stoyle constituted a breach of the duty of care owed to Ms. Stoyle.

115. The Board was the proximate cause of Ms. Stoyle's harm.

116. As a direct cause of defendants' conduct, Ms. Stoyle has suffered and continues to suffer damages including but not limited to physical and emotional distress, loss of professional reputation, loss of pension benefits and other financial losses.


WHEREFORE, the Plaintiff, Kimberly Stoyle, requests that this honorable Court:

1. Enter judgment in favor of the Plaintiff against the defendants on Counts I-XII in an amount to be proved at trial;

2. Award the Plaintiff reasonable attorney's fees and costs;

3. Award Plaintiff emotional distress damages, punitive damages and other remuneration lost;

4. Award such other relief as the court deems fair and just.


## Request for Jury Trial

The Plaintiff, Kimberly Stoyle, requests a trial by jury on all issues so triable.

Respectfully submitted,
Kimberly Stoyle
By her Attorney

Lynn A. Leonard
Attorney-At-Law
527 Main Street, Suite 8
Melrose, MA  02176
(781) 662-6161
B.B.O. No. 561662


Signed under the pains and penalties of perjury this 22nd day of February of 2005.

Kimberly Stoyle

23

℀JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff   **Bristol**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Bristol**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Lynn A. Leonard, Attorney At Law, 527 Main Street, Suite 8, Melrose, MA 02176

Attorneys (If Known)

John J. Davis, Esquire, Pierce, Davis & Perritano, LLP, Ten Winthrop Square, Boston, MA 02110-1257

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question (U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 2000e et. seq. and 42 U.S.C. 1983

Brief description of cause:
Employment discrimination, Whistleblower Claim, Wrongful Discharge

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   D.P. Woodlock   DOCKET NUMBER   0411329DPW

DATE   2/22/05

SIGNATURE OF ATTORNEY OF RECORD   *Lynn A. Leonard*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.    Title of case (name of first party on each side only)  Kimberly Stoyle v. Mansfield Municipal Electric Department, et al

2.    Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See

local rule 40.1(a)(1)).

☐    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☑    II.    195, 368, 400, 440, 441, 444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

☒    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
380, 385, 450, 891.

☐    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
690, 810, 861-865, 870, 871, 875, 900.

☐    V.    150, 152, 153.

3.    Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in
this district please indicate the title and number of the first filed case in this court.

John J. Beliveau v. Town of Mansfield Municipal Electric Department, Civil Action No. 0411329DPW

4.    Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐    NO ☑

5.    Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See
28 USC §2403)

YES ☐    NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐    NO ☑

6.    Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐    NO ☑

7.    Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
40.1(d)).

YES ☑    NO ☐

A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☑    Central Division ☐    Western Division ☐

B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
agencies, residing in Massachusetts reside?

Eastern Division ☐    Central Division ☐    Western Division ☐

8.    If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
yes, submit a separate sheet identifying the motions)

YES ☐    NO ☑

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Lynn A. Leonard

ADDRESS  527 Main Street, Suite 8, Melrose, MA  02176

TELEPHONE NO.  (781) 662-6161

(Coversheetlocal.wpd - 10/17/02)