UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05 10354 DPW

KIMBERLY STOYLE, )
        Plaintiff )
)
VS. )
)
THE MANSFIED MUNICIPAL ELECTRIC DEPARTMENT, )
JOHN D'AGOSTINO, TOWN OF MANSFIELD BOARD )
OF LIGHT COMMISSIONERS, LOUIS AMORUSO, )
MICHAEL MCCUE, DAVID MCCARTER, )
DANIEL DONOVAN, ROGER ACHILLE, AND )
STEVEN MACCAFFRIE, )
        Defendants )

**DEFENDANTS' MOTION TO AMEND ANSWER
TO ADD COUNTERCLAIMS**

The Defendants hereby ask this Honorable Court to allow them to Amend their Answer by adding the attached Counterclaims.

As ground therefore, the Defendants state that discovery conducted in the past three months has developed evidence which supports the Counterclaims. The evidence to support the assertion that Kimberly Stoyle and her former superior, John J. Beliveau, secretly worked together to manufacture both her lawsuit and his claims was not discovered until recently as a result of documents produced by John J. Beliveau.

The Counterclaims the Defendants seek to assert against the Plaintiff is as follows: 1) conspiracy to abuse process; 2) intentional infliction of emotional distress; and 3) conspiracy to commit perjury. The addition of these Counterclaims will not unduly delay the trial of this matter since the facts supporting the claims therein are available to all of the parties and discovery is ongoing in this case. Further, the subject

1

matter of the Counterclaims forms the basis of the defendants' defense to the Plaintiff's complaint and all issues will be tried in any event. Thus, the allowance of this motion will not change the scope of the trial.

Wherefore, the Defendants hereby ask this Honorable Court to allow them to Amend their Answer by adding the attached Counterclaims.

>Respectfully submitted,
>The Defendants,
>Town of Mansfield Municipal Electric Department and
>John D'Agostino,
>By their attorneys,
>
>/s/ Leonard H. Kesten
>Leonard H. Kesten, BBO No. 542042
>Deborah I. Ecker, BBO No. 554623
>BRODY, HARDOON, PERKINS & KESTEN, LLP
>One Exeter Plaza
>Boston, MA 02116
>(617) 880-7100
>
>/s/ Susan Jacobs
>Susan Jacobs, BBO No.
>Robert Mangiaratti, BBO No.
>VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS
>Three Mill Street
>Attleboro, MA 02703
>(508) 222-1463

Dated: April 7, 2006

## REQUEST FOR HEARING

The Defendants hereby respectfully requests a Hearing in this matter as it believes a hearing will assist the Court in rendering a just and fair decision.

>/s/ Leonard H. Kesten
>Leonard H. Kesten, BBO# 058260

2

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I hereby certify that counsel for the Defendants conferred with Lynn Leonard and Anita Sullivan, attorney for the Plaintiff, by discussing the Motion to Amend Answer to Add Counterclaims and Request for Hearing and Motion to Consolidate Cases for Purposes of Trial Pursuant to Rule 42 of the Federal Rules of Civil Procedure and Request for Hearing, in a good faith attempt to resolve or narrow the issues raised by the instant motions and that we were unable to come to a resolution at this time.

/s/ Deborah Ecker
Deborah I. Ecker, BBO No. 554623

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05 10354 DPW

KIMBERLY STOYLE,
        Plaintiff

VS.

THE MANSFIED MUNICIPAL ELECTRIC DEPARTMENT,
JOHN D'AGOSTINO, TOWN OF MANSFIELD BOARD
OF LIGHT COMMISSIONERS, LOUIS AMORUSO,
MICHAEL MCCUE, DAVID MCCARTER,
DANIEL DONOVAN, ROGER ACHILLE, AND
STEVEN MACCAFFRIE,
        Defendants

**COUNTERCLAIMS OF THE DEFENDANTS, TOWN OF MANSFIELD MUNICIPAL ELECTRIC DEPARTMENT AND JOHN D'AGOSTINO AGAINST THE PLAINTIFF, KIMBERLY STOYLE**

**FACTUAL ALLEGATIONS**

1. John D'Agostino (hereinafter "D'Agostino") is employed as the Town Manager of the Town of Mansfield as well as the Manager of the Mansfield Municipal Electric Department, (hereinafter MMED).

2. In September of 1998, D'Agostino hired John Beliveau (hereinafter "Beliveau") as the Director of the MMED.

3. In early 1999, Kim Stoyle (hereinafter "Stoyle") was hired as the accounting officer of the MMED. Her direct supervisor was Beliveau.

4. Soon after Stoyle came to work at the MMED, she and Beliveau began acting in concert to obtain pay raises for Stoyle and Beliveau and to damage Mansfield employees who they perceived to be their enemies.

5. Stoyle and Beliveau instituted a sham hiring "process" which was designed to result in the employment of persons favored by them and to exclude other qualified candidates from legitimate consideration.

6. In late January of 2000, a position of financial assistant became available at the MMED.

7. D'Agostino recommended a highly qualified applicant to Beliveau and asked that she be interviewed for the job.

1

8.  Beliveau agreed that she was a qualified applicant and agreed that she would be interviewed for the position.

9.  Thereafter, Beliveau and Stoyle conspired to deny a job interview to this qualified applicant for the position of Financial Assistant at the MMED because they perceived her to be friendly with D'Agostino.

10.  At the same time, Beliveau and Stoyle conspired to interview less qualified candidates because of their relationship with them.

11.  Beliveau and Stoyle conspired to rig the hiring process so that a candidate was hired for the position not because she was the most qualified but because she was friendly with Stoyle.

12.  Sometime in 2000 or 2001, Beliveau and Stoyle came to believe that D'Agostino was trying to make Beliveau "look bad".

13.  Beliveau and Stoyle entered into an agreement to make false allegations against D'Agostino in an attempt to persuade the Selectmen to terminate D'Agostino's employment.

14.  In February of 2002, Beliveau and Stoyle decided to create a "whistleblower" lawsuit against D'Agostino and the Town of Mansfield.

15.  Beliveau obtained legal advice from the attorney for the MMED as to how to bring an action against the MMED and D'Agostino as a "whistleblower".

16.  In February of 2002, Beliveau and Stoyle determined that they would not be able, at that time, to prove the legal elements necessary to win a lawsuit against D'Agostino for "whistleblowing".

17.  As a result, Beliveau and Stoyle agreed to manufacture evidence to support a Sexual Harassment action against D'Agostino.

18.  Beliveau and Stoyle were aware that D'Agostino's employment contract was due for renewal in early 2003.

19.  Beliveau and Stoyle believed that two of the five Selectmen would vote to terminate D'Agostino's employment contract, but determined that they needed to persuade at least one more Selectman to do so.

20.  In the fall of 2002, Beliveau and Stoyle agreed that Stoyle would file a false complaint alleging Sexual Harassment against D'Agostino.

21.  Beliveau and Stoyle, agreed to testify falsely about D'Agostino's actions during the pendency of that lawsuit.

22.     In December of 2002, Stoyle, acting in concert with Beliveau, filed a complaint at the Massachusetts Commission Against Discrimination (hereinafter "MCAD") against D'Agostino.

23.     Beliveau and Stoyle, acting in concert, filed the MCAD complaint not because Stoyle and Beliveau legitimately believed that Stoyle had been sexually harassed, but because Beliveau and Stoyle wanted to ruin the career of D'Agostino and because Beliveau and Stoyle wanted to create evidence which would support future lawsuits.

24.     The complaint received publicity, as a result of which D'Agostino and some Selectmen commented to the press.

25.     Thereafter, Beliveau obtained legal advice from counsel for the MMED as to how Stoyle could bring another action against D'Agostino as a result of their comments to the press.

26.     Beliveau helped Stoyle draft her second MCAD complaint.

27.     Beliveau assisted Stoyle in collecting evidence to support her allegations against D'Agostino and the MMED while both used MMED equipment and while both were being paid by the MMED.

28.     Subsequently, Stoyle filed a second MCAD complaint against D'Agostino and the Mansfield Selectmen.

29.     At some point in 2002 or 2003, on information and belief, Beliveau in concert with Stoyle and others filed a complaint at the Ethics Commission making allegations of wrongdoing against D'Agostino as result of the hiring decision described in paragraphs 5 through 11.

30.     Beliveau, in concert with Stoyle and others, caused the Ethics complaint to be filed not because of a legitimate belief of wrongdoing by D'Agostino, but because they wished to ruin D'Agostino's career and because they wanted to create a predicate for a "whistleblower" lawsuit.

31.     Beliveau and Stoyle thereafter provided false testimony during the Stoyle MCAD proceeding and, on information and belief, provided false information to the Ethics Commission.

32.     In January of 2004, Beliveau came to believe that he was about to be terminated. In response, he filed an MCAD complaint against D'Agostino not because of any legitimate belief that he was the victim of retaliation, but in order to build the grounds for a lawsuit alleging retaliation if he was terminated.

33.     Beliveau and Stoyle, beginning early into their employment at the MMED and continuing thereafter, fostered an atmosphere of hostility and contempt towards certain Town of Mansfield employees including the Treasurer Collector, the Town Accountant, and the Town Manager.

34. Beliveau and Stoyle, in their communications, demonstrated contempt for other Town employees and an unwillingness to accept the fact that John D'Agostino, the Manager of the Light Department, was their supervisor.

35. While at work at the MMED, Beliveau and Stoyle referred to the Treasurer Collector, the Assistant Assessor, and the Town Accountant as "losers".

36. While at work at the MMED, Stoyle referred to D'Agostino as a "scum bag".

37. As a result of Beliveau's actions and attitude towards Town employees, he was terminated from the MMED in February of 2004.

38. After his termination, Beliveau filed a second MCAD complaint, and, subsequently, the instant USDC complaint.

39. Beliveau and Stoyle continued their conspiracy to file and prosecute their lawsuits after Beliveau was terminated and Stoyle remained employed with the MMED.

40. After Beliveau was terminated, Stoyle continued to assist him in his lawsuit using MMED equipment and during her working hours.

41. Stoyle used her false testimony as well as Beliveau's false testimony to attempt to persuade the Town of Mansfield to settle her baseless lawsuit.

42. After the Town refused to pay her, Stoyle concocted a pretext to leave her employment and claim that she was "constructively discharged".

43. Thereafter, Stoyle filed a lawsuit against D'Agostino and others in the USDC.

44. All four of the MCAD complaints filed by Beliveau and Stoyle, and both of the USDC complaints, and the complaint to the Ethics Commission were filed in concert by Beliveau and Stoyle with malice and without basis in fact or in law.

## COUNT I
## CONSPIRACY TO ABUSE PROCESS
### (Defendants v Kimberly Stoyle)

45. Defendants repeat their allegation contained in paragraphs 1 through 44.

46. Beliveau together with Stoyle conspired to use lawful process with malice to damage the Defendants.

Wherefore, the Defendants demand judgment against the Plaintiff along with an award of damages and attorneys' fees and costs incurred as a result of both Beliveau's and Stoyle's MCAD Complaints and federal lawsuits, as well as the Ethics complaint against John D'Agostino.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (John D. D'Agostino v. Kimberly Stoyle)

47.     Defendants repeat their allegation contained in paragraphs 1 through 46.

48.     Defendants state that Beliveau and Stoyle intended to inflict emotional distress upon D'Agostino when they conspired to file false complaints against him including a complaint with the Ethics Commission and Ms. Stoyle's sexual harassment complaints filed with the MCAD.

        Wherefore, the Defendant, John D'Agostino, demands judgment against Plaintiff along with an award of damages for the emotional distress that Defendant, John D'Agostino, has been forced to endure, as well as costs.

## COUNT III
## CONSPIRACY TO COMMIT PERJURY
### (Defendants v Kimberly Stoyle)

49.     Defendants repeat their allegation contained in paragraphs 1 through 48.

50.     The Defendants state that Beliveau and Stoyle agreed that they would each testify falsely under oath so that Stoyle could make a false claim of sexual harassment and so that Beliveau could subsequently file a whistleblower and retaliation claim.

        Wherefore, Defendants demand judgment against Plaintiff along with an award of damages and attorneys' fees and costs. In addition, all individual Defendants request this Court award them damages for the emotional distress that they have been forced to endure because of the actions of Beliveau and Stoyle.

                                Respectfully submitted,
                                The Defendants,
                                Town of Mansfield Municipal Electric Department
                                and John D'Agostino,
                                By their attorneys,


                                /s/ Leonard H. Kesten
                                Leonard H. Kesten, BBO No. 542042
                                Deborah I. Ecker, BBO No. 554623
                                BRODY, HARDOON, PERKINS & KESTEN, LLP
                                One Exeter Plaza
                                Boston, MA 02116
                                (617) 880-7100

>   /s/ Susan Jacobs
> Susan Jacobs, BBO No.
> Robert Mangiaratti, BBO No.
> VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS
> Three Mill Street
> Attleboro, MA 02703
> (508) 222-1463

Dated: April 7, 2006