UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-11329-DPW

_____
DR. JOHN J. BELIVEAU,            )
                                 )
            Plaintiff            )
VS.                              )
                                 )
TOWN OF MANSFIELD MUNICIPAL      )
ELECTRIC DEPARTMENT AND          )
JOHN D'AGOSTINO,                 )
                                 )
            Defendants           )
_____)

                                        CONSOLIDATED WITH

                        Civil Action No.: 05-10354-DPW

_____
KIMBERLY STOYLE,                 )
            Plaintiff            )
                                 )
VS.                              )
                                 )
THE MANSFIELD MUNICIPAL          )
ELECTRIC DEPARTMENT , JOHN       )
D'AGOSTINO, TOWN OF MANSFIELD)
BOARD OF LIGHT COMMISSIONERS, )
LOUIS AMORUSO, MICHAEL MCCUE)
DAVID MCCARTER, DANIEL           )
DONOVAN, ROGER ACHILLE, AND   )
STEVEN MACCAFFRIE,               )
            Defendants           )
_____)

## DEFENDANTS' PRE-TRIAL MEMORANDUM

Pursuant to the Order re: Trial and Pre-Trial Conference entered by the

Court in this matter on June 5, 2007, the Defendants hereby submit the following

Pre-Trial memorandum:

**1.    NAMES, ADDRESSES, AND PHONE NUMBERS OF TRIAL COUNSEL**

Leonard Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten, LLP

1

One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Susan Jacobs, Esq.
Volterra, Goldberg & Jacobs
Three Mill Street
Attleboro, MA 02703
(508) 222-1463

**2.    WHETHER THE CASE IS TO BE TRIED WITH OR WITHOUT A JURY**

This case will be tried with a jury.

**3.    DEFENDANTS' SUMMARY OF THE EVIDENCE REGARDING
LIABILITY AND DAMAGES**

John D'Agostino is employed as the Town Manager of the Town of

Mansfield. He is also employed as the Manager of the Town of Mansfield

Municipal Electric Department ("MMED").

In September 1998, Mr. D'Agostino hired the Plaintiff John Beliveau to be

the Director of the MMED.  In early 1999, Kimberly Stoyle was hired as the

accounting officer for the MMED.   Her direct supervisor was Beliveau.  In early

2000, D'Agostino recommended that Stoyle and Beliveau consider a highly

qualified candidate for a financial assistant position at the MMED. Instead of

fairly considering this candidate, Stoyle and Beliveau created a sham hiring

process designed to result in the employment of persons favored by them and to

exclude this qualified candidate from legitimate consideration.

Sometime in 2000 or 2001, Beliveau and Stoyle came to believe that

D'Agostino was trying to make Beliveau look bad.  Knowing that they were

employees at will, Beliveau and Stoyle began to consider how they could bring a

lawsuit against D'Agostino to protect their jobs. In the fall of 2002, Beliveau and

Stoyle believed that D'Agostino was considering terminating their employment

2

at the MMED. As a result, Beliveau and Stoyle agreed to manufacture evidence to support a sexual harassment action against D'Agostino. Beliveau and Stoyle agreed that Stoyle would file a false complaint alleging sexual harassment against D'Agostino.  In December 2002, Stoyle filed a complaint at the Massachusetts Commission Against Discrimination ("MCAD") against D'Agostino. Stoyle filed the MCAD complaint not because she legitimately believed that she had been sexually harassed by D'Agostino, but because Stoyle wanted to ruin D'Agostino's career and because she wanted to create evidence which would support future lawsuits by herself and Beliveau. Beliveau assisted Stoyle in collecting evidence to support her allegations against D'Agostino using MMED equipment to do so while both were employed and being paid by the MMED.  Stoyle subsequently filed a second MCAD complaint against D'Agostino and the Mansfield Selectmen.

At some point in 2002 or 2003 a complaint was filed with the Ethics Commission making allegations of wrongdoing against D'Agostino as a result of the hiring of the financial assistant at the MMED in early 2,000. Beliveau provided false information to the Ethics Commission with regard to this complaint in order to harm D'Agostino.  Beliveau did not believe that D'Agostino violated any ethical rules.

In January of 2004, Beliveau came to believe that he was about to be terminated.  In response he filed an MCAD complaint against D'Agostino not because of any legitimate belief that he was the victim of retaliation, but in order to build the grounds for a lawsuit alleging retaliation if he was terminated.

 From many years of his employment with the MMED, Beliveau and Stoyle demonstrated contempt for Town employees and an unwillingness to

3

accept the fact that D'Agostino, the Manager of the MMED, was their supervisor.
D'Agostino repeatedly attempted to direct Beliveau, and Stoyle, to work
cooperatively with Town employees, without success. As a result of Beliveau's
actions and attitudes towards Town employees, he was terminated from the
MMED in February 2004.

After Beliveau's termination, he and Stoyle continued to work together to
advance their lawsuits. Stoyle attempted to persuade the Town of Mansfield to
settle her baseless lawsuit.  After the Town refused to pay her, Stoyle found a
higher paying job and now claims that she was "constructively discharged".
Thereafter, Stoyle filed a lawsuit against D'Agostino and others in the USDC.

After Beliveau was terminated, the Defendants learned that Beliveau had
converted MMED funds while employed by the MMED. The Defendants moved
to amend their answer to add a counterclaim for this conversion. Beliveau claims
that the counterclaim was defamatory; the Defendants will prove that Beliveau
indeed converted MMED funds for his own private use.

The evidence will show that throughout his tenure at the MMED, Beliveau
and Stoyle did not work cooperatively with other Town Departments and
Defendant D'Agostino. There existed an atmosphere of hostility and a lack of
cooperation between employees of the MMED many Town employees. The
situation deteriorated after Kim Stoyle filed her false MCAD complaint and she
and Beliveau escalated their efforts to create further lawsuits against their
employer. By the fall of 2003, the tension became so great that the Defendants
had no choice but to terminate the employment of Plaintiff Beliveau.

As to Kim Stoyle individually, the Defendants expect to show that Ms.
Stoyle never believed that she was the victim of sexual harassment.  The

Defendants expect to prove that she was responsible for creating an illegitimate hiring process within the MMED for financial assistants so that candidates were not considered based on their qualifications.

In the fall of 2002, Ms. Stoyle and Dr. Beliveau believed that their jobs were threatened. Ms. Stoyle and Dr. Beliveau then decided that she would file a sexual harassment claim against the Town Manager. She did not file the claim because of a legitimate belief that she was a victim but, instead, she filed it in order to protect her job and to attempt to persuade the Board of Selectmen to terminate Mr. D'Agostino.

The Defendants expect to prove that Ms. Stoyle was never a "whistleblower". The communications between the MMED and the Town regarding their financial relationship were ordinary disputes, not reports of illegal conduct. All the disputes were discussed and were resolved to everyone's satisfaction. Further, there was never any adverse employment action taken against Ms. Stoyle as a result of her alleged "whistleblowing".

**4.    STATEMENT OF FACTS TO BE SUBMITTED TO THE COURT OR JURY**

The Defendants stipulate to the following facts:

1.    Dr. John J. Beliveau was the Director of the Town of Mansfield Municipal Electric Department from September 8, 1998 through February 12, 2004.

2.    Kimberly Stoyle was employed as the Chief Financial Officer of the Electric Department for a portion of the time that Beliveau was the Director of the Electric Department.

3.     John D'Agostino was the Town Manager and Manager of the Town of Mansfield Municipal Electric Department throughout the time that Beliveau was the Director of the Electric Department.

4.     On December 5, 2002, Kimberly Stoyle filed a Charge of Discrimination with the MCAD in which she accused the Town Manager, John D'Agostino, of sexual harassment and retaliation.

5.      In early 2003, the Electric Department conducted an investigation into the Stoyle charge.  As part of the investigation, Dr. Beliveau was interviewed by attorney James Lampke.

6.     In September 2003, Dr. Beliveau was deposed by the attorney representing Ms. Stoyle in connection with the Stoyle charge.

7.     On January 13, 2004, Beliveau filed a Charge of Discrimination against the Electric Department and D'Agostino with the MCAD.

8.      On February 12, 2004, D'Agostino terminated Beliveau's employment with the Electric Department.

5.    **CONTESTED ISSUES OF FACT**

1.     Was Jack Beliveau terminated for an improper reason or was he terminated because he could not work cooperatively with others?

2.     Was Jack Beliveau the victim of retaliation because of his support for Kim Stoyle's sexual harassment claim?

3.     Was Jack Beliveau the victim of retaliation because of his cooperation with an Ethics Commission investigation of John D'Agostino?

4.     Was Jack Beliveau encouraging the Ethics Commission to take adverse action against D'Agostino not because he believed that

6

D'Agostino's actions were unethical but in order to further his own

illegitimate ends?

5.    Did Kim Stoyle have a legitimate good faith belief that she had

been sexually harassed by John D'Agostino or did she bring her

MCAD complaint for illegitimate reasons?

6.    Was Kim Stoyle the victim of retaliation for bringing her MCAD

complaint?

7.    Was Kim Stoyle a "whistleblower"?

8.    Was Kim Stoyle constructively discharged?

9.    Were the allegations made against Beliveau defamatory or true?

**6.    ANY JURISDICTIONAL QUESTION**

None.

**7.    ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS,
TOGETHER WITH SUPPORTING AUTHORITY**

None.

**8.    ANY REQUESTED AMENDMENTS TO THE PLEADINGS**

Defendants have filed a Partial Motion for Summary Judgment as to the

individual defendants in the Stoyle case.  Plaintiff Stoyle opposed that motion.

The motion is still pending before the Court.  There is also a pending Motion for

Judgment on the Pleadings in the Beliveau case.

**9.    ADDITIONAL MATTERS**

None.

**10.    PROBABLE LENGTH OF TRIAL**

The Defendants estimate the trial will last approximately four weeks.

**11.    FACT AND EXPERT WITNESSES**

The Defendants may call the witnesses listed by the Plaintiff with the exception of attorney Leonard Kesten.  The Defendants anticipate that they will call the following witnesses at trial.

<u>Fact Witnesses</u>

1.    Dr. John Beliveau

2.    John D'Agostino

3.    Kimberly Stoyle

4.    Steven MacCaffrie

5.    Richard Boucher

6.    Bea Kearney

7.    Gary Babin

8.    Gary D'Ambra

9.    Bradford Wills

10.   Kara Cook (Torman)

11.   Cheryl Bouldry

12.   George Dentino

13.   Michael Picclomino

14.   Thomas Hottleman

15.   James Pender

16.   Andrea Hottleman

17.   Laurie Anderson

18.   James Lampke

19.   Ken Marchars – Commonwealth of Massachusetts Department of Revenue

20.   James Johnson – Commonwealth of Massachusetts Department of Revenue

21.   Robert Guaraldi

22.   Jen Trask

23.   Eileen Oulette

24.   Sandy Larosee

25.   Donna Sirois

26.   Elizabeth Carter

27.   Jackie Lee

28.   Elaine Peri

29.   Michael Elsworth

30.   Andy Gazzolo

31.   Louis Amoruso,

32.   Michael McCue

33.   David McCarter

34.   Daniel Donovan

35.   Roger Achille

Expert Witnesses

36.   Karen Roberts, CPA

37.   John Sullivan, CPA

38.   Robert Guaraldi

The Defendants reserve the right to call any witness or submit any exhibit listed by the Plaintiffs.  The Defendants further reserve the right to supplement this witness list prior to trial.

**12.    IDENTIFICATION OF ANY PORTIONS OF DEPOSITIONS OR INTERROGATORY RESPONSES TO BE OFFERED AT TRIAL**

None.

**13.    IN CASES TO BE TRIED BY A JURY**

a.    Requests for Instructions with citation to supporting authority – **attached hereto as Exhibit 1**;

b.    Proposed interrogatories or special verdict forms – the Defendants will provide a verdict form once the Court and the parties narrow the issues to be tried.

c.    Proposed questions for the <u>voir</u> <u>dire</u> examination – none.

**14.    MOTIONS IN LIMINE**

The Defendants have filed a Motion in Limine to Preclude Certain Testimony about Individual Selectmen and Board Of Light Commissioners – **attached hereto as Exhibit 2.**

Respectfully submitted,
The Defendants,
By their attorneys,

/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO# 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100


/s/ Susan Jacobs
Susan Jacobs, Esq.
VOLTERRA, GOLDBERG & JACOBS
Three Mill Street
Attleboro, MA 02703
(508) 222-1463

DATED: June 8, 2007

10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-11329DPW

DR. JOHN J. BELIVEAU,                    )
                                         )
            Plaintiff                    )
VS.                                      )
                                         )
TOWN OF MANSFIELD MUNICIPAL   )
ELECTRIC DEPARTMENT AND JOHN )
D'AGOSTINO,                              )
                                         )
            Defendants   )

CONSOLIDATED WITH:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.:  05-10354DPW

KIMBERLY STOYLE,                         )
                                         )
            Plaintiff                    )
VS.                                      )
                                         )
THE MANSFIELD MUNICIPAL        )
ELECTRIC DEPARTMENT, JOHN      )
D'AGOSTINO, TOWN OF MANSFIELD)
BOARD OF LIGHT COMMISSIONERS, )
LOUIS AMORUSO, MICHAEL McCUE, )
DAVID McCARTER, DANIEL          )
DONOVAN, ROGER ACHILLE and      )
STEVEN MacCAFFRIE,                      )
                                         )
            Defendants            )

## DEFENDANTS' JURY INSTRUCTIONS

1.      Both of the Plaintiffs in this action, Dr. John Beliveau and Kim Stoyle,

were employees at will of the Mansfield Municipal Electric Department. What

that means is that the MMED was free to terminate their employment with or

without cause. That is, the employer did not have to have a reason to end their

employment. They could be terminated for any reason, or they could be

terminated for no reason at all. However, they could not be terminated for an illegal reason.

In this case, Dr. Beliveau claims that he was terminated for illegal reasons. The Defendants deny this and claim that they discharged Dr. Beliveau for legal reasons. Dr. Beliveau also claims that certain statements made about him by the Defendants were defamatory.

Even though she resigned her position with the Town, Ms. Stoyle claims that the Defendants made her working conditions so intolerable that she was forced to resign. Thus, she claims that she was constructively discharged. She claims that she was constructively discharged for illegal reasons. The Defendants deny that they constructively discharged Ms. Stoyle.

I will now go through the legal elements of the claims in this case.

### Title VII - Retaliation

**(Stoyle v. MMED and D'Agostino)**

2.          Kim Stoyle filed her Charge of Discrimination on December 5, 2002,
charging the Town of Mansfield, the Mansfield Electric Department, and John
D'Agostino with gender discrimination and retaliation.  Specifically, Stoyle
charged that she was the subject of sexual harassment by John D'Agostino.
For Stoyle to have prevailed on her sexual harassment claim, she would have
to have proved that (1) she was subjected to conduct of a sexual nature; (2)
such conduct was unwelcome; (3) such conduct was sufficiently severe or
pervasive to cause the work environment to become hostile, intimidating or
humiliating to an objectively reasonable person in Stoyle's position; and (4)
such conduct affected Stoyle's job performance or altered the conditions of
her employment.  Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673,
678-679 (1993); College Town, Div. Of Interco, Inc. v. MCAD, 400 Mass. 156,
162 (1987).

3.     Courts have looked to guidelines issued by the Equal Employment

Opportunity Commission ("EEOC") interpreting Title VII for a definition of

sexual harassment.  The EEOC guidelines define sexual harassment as:

   Unwelcome sexual advances, requests for sexual favors, and other verbal
   or physical conduct of a sexual nature constitute sexual harassment when (1)
   submission to such conduct is made either explicitly or implicitly a term or
   condition of an individual's employment, (2) submission to or rejection of such
   conduct by an individual is the basis for employment decisions affecting such
   individual, or (3) such conduct has the purpose or effect of unreasonably
   interfering with an individual's work performance creating an intimidating,
   hostile or offensive work environment.  EEOC Guidelines on Discrimination
   Because of Sex, 29 C.F.R. § 1604.11(a).

4.       In her original charge of discrimination, Ms. Stoyle claimed that she was subjected to a hostile work environment. I instruct you that a hostile work environment, by itself, cannot form the basis of a lawsuit. Even if the employee is subjected to a hostile work environment, if the hostility is not caused by discrimination, it is not actionable.

In order for a hostile work environment to form the basis of a lawsuit, the hostility must be the result of an improper motive. In this case, Ms. Stoyle claimed that the hostile work environment resulted from sexual  harassment. To prevail on a theory of hostile work environment due to sexual harassment, Stoyle would have had to show "that the workplace was permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Stoyle's] employment and create an abusive working environment." Noviello v. City of Boston, 398 F.3d 76 (1st Cir. 2005) quoting, Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

5.       Stoyle has not pursued her sexual harassment claim here, but rather, claims that she was retaliated against for having filed her sexual harassment complaint in December 2002.  Specifically, Stoyle claims that she was retaliated against and subjected to adverse employment actions as the result of filing her complaint which retaliation included false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination, and constructive discharge.

6.    Absent direct evidence of retaliation, a burden-shifting framework is applied to a retaliation claim.  Under the burden-shifting model, Ms. Stoyle must make a prima facie showing that (1) [she] engaged in protected conduct; (2) she was thereafter subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. Mesnick v. General Electric Company, 950 F.2d 816 (1st Cir. 1991) citing, Connell v. Bank of Boston, 924 F.2d 1169 (1st Cir), *cert. denied*  501 U.S. 1218 (1991).

If Stoyle is able to set forth evidence to make out a prima facie case of retaliation, then the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for its employment decision.  Id.

If this is accomplished, the ultimate burden falls on Stoyle to show that the Defendants' proffered reason is a pretext masking retaliation for Stoyle's filing of her sexual harassment complaint.  Id.  "At this final stage however it will not suffice for [Stoyle] simply to show (or the fact finder to find) that the Defendants' proffered explanation is unworthy of credence: [Stoyle] as the party bearing the ultimate burden of persuasion, must also show that the true motivation was discriminatory animus.  '[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." Saad v. Stanley Street Treatment and Resources, Inc., 1994 WL 846911 (D. Mass. May 20, 1994) quoting, St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

7.      As part of her retaliation claim, Stoyle alleges that she was subject to ongoing harassment and retaliation.   Under Title VII, the creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action.  Noviello v. City of Boston, 398 F. 3d 76 (1st Cir. 2005) (citations omitted).

8.      "In order to prove a hostile work environment, [Stoyle] must show that she was subjected to severe or pervasive harassment that materially altered the conditions of her employment. The harassment must be 'objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'  In determining whether a reasonable person would find particular conduct hostile or abusive, [you] must mull the totality of the circumstances, including factors such as the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance".  Noviello v, City of Boston 398 F. 3d at 92, quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal citations omitted).

9.      "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Id.  "On the one hand, if protected activity leads only to commonplace indignities typical of the workplace (such as tepid jokes, teasing or aloofness), a reasonable person would not be deterred from such activity.  After all, an employee reasonably can expect to encounter such tribulations even if she eschews any involvement in protected activity. On the other hand, severe or pervasive harassment in retaliation for engaging in protected activity threatens to deter due enforcement of the rights conferred by statutes such as Title VII and Chapter 151B." Id.  "Along this continuum, rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim. " Id. citing, Mannett v. Bank of Am., 339 F.3d 792, 803 (9th Cir. 2003); Gagnon v. Sprint Corp., 284 F.3d 839, 850 (8th Cir. 2002); cf. Simas v. First Citizens Fed. Credit Union, 170 f.3d 37, 52 n. 12 (1st Cir. 1999) (noting, in related context that "social ostracism alone is rarely actionable").  "The anti-discrimination laws were not enacted to create or enforce a "general civility code." Id.  citing, Oncole v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998).

## Beliveau v. MMED and D'Agostino

10.    Beliveau also brings a claim for retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et. seq. ("Title VII"). Beliveau claims that he was retaliated against in violation of Title VII because he allegedly corroborated much of Stoyle's sexual harassment and retaliation claims made against D'Agostino both when he was interviewed by attorney James Lampke during the Town's investigation into Stoyle's sexual harassment claims in early 2003 and again when he was deposed by the attorney representing Stoyle in connection with Stoyle's sexual harassment case.  Further, Beliveau claims that he was retaliated against for filing his own Charge of Discrimination with the MCAD and the EEOC on January 13, 2004.

11.     As with Stoyle, to prevail on his retaliation claim, Beliveau must make a

prima facie showing that (1) he engaged in protected conduct; (2) he was

thereafter subjected to an adverse employment action; and (3) a causal

connection existed between the protected conduct and the adverse action.

Mesnick v. General Electric Company, 950 F.2d 816 (1st Cir. 1991) citing, Connell

v. Bank of Boston, 924 F.2d 1169 (1st Cir), *cert. denied* 501 U.S. 1218 (1991).

12.    If Beliveau is able to set forth evidence to make out a prima facie case of retaliation, then the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for its decision to terminate Beliveau.  <u>Id.</u>

13.     Once this is accomplished, the ultimate burden falls on Beliveau to show that the Defendants' proffered reason is a pretext masking retaliation for Beliveau's corroboration of Stoyle's sexual harassment complaint as well as the filing of his own Charge of Discrimination claiming retaliation for having supported Stoyle's claim filed on January 13, 2004 prior to Beliveau's termination. <u>Id.</u>  "At this final stage it will not suffice for [Beliveau] simply to show (or the fact finder to find) that the Defendants' proffered explanation is unworthy of credence: [Beliveau] as the party bearing the ultimate burden of persuasion, must also show that the true motivation was discriminatory animus. '[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." <u>Saad v. Stanley Street Treatment and Resources, Inc.</u>, 1994 WL 846911 (D. Mass. May 20, 1994) quoting, <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993).

**M.G.L. c. 149, § 185, Whistleblower Statute**

**Stoyle v. MMED**
**Beliveau v. MMED**

14.     Both Stoyle and Beliveau have brought claims pursuant to the

Massachusetts Whistleblower Statute, M.G.L. c. 149, § 185.

The relevant portions of the Whistleblower Statute provide that:

> (b) An employer shall not take any retaliatory action against an
>
> employee because the employee does any of the following:
>
> (1) Discloses, or threatens to disclose to a supervisor or to a public
>
> body an activity, policy or practice of the employer, or of another
>
> employer with whom the employee's employer has a business
>
> relationship, that the employee reasonably believes is in violation
>
> of a law, or a rule or regulation promulgated pursuant to law, or
>
> which the employee reasonably believes poses a risk to public
>
> health, safety or the environment;
>
> (2) Provides information to, or testifies before, any public body
>
> conducting an investigation, hearing or inquiry into any violation
>
> of law, or a rule or regulation…or activity, policy or practice which
>
> the employee reasonably believes poses a risk to public health,
>
> safety or the environment by the employer…
>
> (3) Objects to, or refuses to participate in any activity, policy or
>
> practice which the employee reasonably believes is in violation of a
>
> law, or a rule or regulation promulgated pursuant to law, or which
>
> the employee reasonably believes poses a risk to public health,
>
> safety or environment.

M.G.L. c. 149, § 185(b)(1), (2) and (3).

In order to prevail on their Whistleblower claims, Stoyle and Beliveau must prove, (1) that they objected to or refused to participate in an activity, policy or practice that they reasonably believed was in violation of a law, rule, or regulation or that they disclosed or threatened to disclose to a public body an activity, policy, or practice of the employer that they reasonably believed was in violation of a law or that they provided information to a public body conducting an investigation into a violation of the law; (2) that their refusal to participate in the activity or their disclosure or threatened disclosure of the illegal activity or their provision of information to a public body played a substantial or motivating part in the decision to take the adverse employment action alleged, and (3) that the retaliatory action caused them damages.  See, Larch v. Mansfield Municipal Electric Department,272 F.3d 63 (Mass. 2001).

15.     "The Whistleblower Act gives an aggrieved employee a private right of

action against a public employer, including a municipality, if the employer takes

retaliatory action against [him or her] for engaging in protected activities. "

<u>Putnam v. Town of Saugus</u>, 365 F.Supp. 2d 151, 194 (D. Mass. 2005) citing,

<u>Bennett v. City of Holyoke</u>, 362 F.3d 1,5 (1st Cir. 2004).

16.     The Whistleblower statute defines "retaliatory action" as "the discharge, suspension, or demotion of an employee or other adverse employment action taken against an employee and the terms and conditions of employment." M.G.L. c. 149, § (a)(5).

## Intentional Infliction of Emotional Distress

### Beliveau v. D'Agostino

17.     Beliveau brings a claim against D'Agostino for the intentional infliction of emotional distress for conduct by D'Agostino <u>after</u> Beliveau's termination, including statements made by D'Agostino to the press as well as the filing of a motion to amend his answer to file a counterclaim against Beliveau in this lawsuit.  To prevail on his claim for the intentional infliction of emotional distress, Beliveau must prove by a preponderance of the evidence that:

   a.  D'Agostino intended to inflict emotional distress or he knew or should have known that emotional distress was likely to result from his conduct;

   b.  D'Agostino's conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community;

   c.  D'Agostino's conduct caused Beliveau emotional distress; and,

   d.  The emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure.

  <u>See</u> , <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140 (1976); <u>see</u> <u>also</u>, <u>Tetrault v. Mahoney, Hawkes & Goldings,</u> 425 Mass. 456, 466 (1997); <u>Payton v. Abbott Labs</u>, 386 Mass. 540 (1982)

18.     In order to prove intentional infliction of severe emotional distress, Beliveau must prove that D'Agostino acted either with a desire or knowledge that emotional distress would result from his conduct or that he should have known that his conduct would cause Beliveau emotional distress. Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' "Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. at 466, citing Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts § 46, coment d (1965).

## Stoyle v. MMED and D'Agostino

19.    Stoyle also brings a claim for the intentional infliction of emotional
distress against the MMED and D'Agostino. As with Beliveau's claims, however,
only conduct that occurred after she resigned from her employment with the
MMED may be considered.

**Defamation**

**Beliveau v. D'Agostino**

20.     Beliveau brings a claim against D'Agostino for defamation based on statements made by D'Agostino to the press after Beliveau was terminated as well as representations made in D'Agostino's proposed counterclaim..  To prevail on his defamation claim, Beliveau must prove that (1) D'Agostino published a defamatory statement about Beliveau; (2) the statement at issue was a materially false statement of fact; (3) D'Agostino acted with some degree of fault and (4) Beliveau suffered damage as a result of the defamatory publication. <u>Draghetti v. Chmielewski</u>, 416 Mass. 808, 813 n.4 (1994).

21.     To satisfy his burden of proving falsity, Beliveau must prove that the statement is materially false. If the statement is not literally true or not true in every technical detail, but is nonetheless substantially true, then Beliveau cannot prevail.  See, Bander v. Metropolitan Life Ins. Co., 313 Mass. 337 (1943); Thompson v. Boston Publishing Co., 285 Mass. 344 (1934); Restatement (Second) of Torts § 581A cmt. f (1977).

## G.L. c. 151B, § 4(4)(A) – Coerce, Intimidate, Threaten, or Interfere

## Beliveau v. D'Agostino

22.     Beliveau has brought a claim against D'Agostino for interfering with the exercise of his rights to give sworn testimony and truthful testimony against the MMED concerning Ms. Stoyle's sexual harassment claim first when he was interviewed by Attorney Lampke as part of the Town's investigation into Stoyle's sexual harassment claim and again when he was deposed by Ms. Stoyle's attorney in Ms. Stoyle's sexual harassment case. .  Chapter 151B makes it unlawful for any person to "coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by Chapter 151B."  M.G.L. c. 151B, § 4(4)(A).  To prevail on his claim against D'Agostino, Beliveau must show that D'Agostino coerced him, intimidated him, threatened him, or interfered with his right to provide the testimony in support of Stoyle's sexual harassment case or with his right to file his own Chapter 151B claim.

**G. L. c. 151B, § 4(5) Aiding and Abetting**

**Stoyle v. Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven MacCaffrie**

23.      Stoyle has brought claims against the individual members of the Board of Light Commissioners, Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven MacCaffrie for aiding and abetting through their acts and omissions in allegedly failing to investigate and prevent alleged continued known harassment and retaliation against Stoyle.

24.     Chapter 151B states that, it is unlawful for "any person whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under Chapter 151B or attempt to do so.  To be found individually liable, an individual must actively perpetrate or assist in the acts forbidden by Chapter 151B."  See, M.G.L. c. 151B, § 4; see also, Beaupre v. Cliff Smith & Associates, 50 Mass. App. Ct. 480 (2000).

25.     To prevail on her aiding and abetting claims against each individual member of the Board of Light Commissioners, Stoyle must show that the wrongs committed by each member individually are "separate and distinct from the claim in main" and also "provide credible evidence that each member individually shared an intent to discriminate not unlike that of the alleged principal offender, and that each member individually knew of his supporting role in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B."  Magill v. Mass. State Police, 244 M.D.L.R. 355, 365 (2009), quoting, Harmon v. Malden Hosp., 19 M.D.L.R. 157, 158

26.    Individual liability is only triggered if the individual's inaction in face of actual knowledge of discrimination rises to the level of deliberate indifference. Such deliberate indifference to another's unlawful conduct is "not merely [being] passive but an affirmative condonation of wrongdoing." Chaplan v. University of Massachusetts, 977 F. Supp. 72 (D. Mass. 1997).  In order to prevail on an aiding and abetting claim under Chapter 151B, Stoyle must demonstrate two things.  First, there must be a wholly individual and distinct wrong that was committed by the individual defendant, here the individual member of the Light Commission, and second, there must be a showing that the aider or abettor [the individual member of the Light Commissioner named] shared an intent to discriminate not unlike that of the alleged principal offender and that the aider or abettor knew of his or her supporting role in an enterprise designed to deprive an individual of a right guaranteed him under Chapter 151B.  Harmon v. Malden, 19 M.D.L.R. at 158.

## M.G.L. c. 151B, § 4(4) Retaliation

### Beliveau v. D'Agostino

27.     Beliveau claims that D'Agostino retaliated against him for corroborating

Stoyle's allegations of sexual harassment during the investigation into that

matter and for filing his own charges with the MCAD and the EEOC.

In Massachusetts, M.G.L. c. 151B, §4(4) makes it unlawful for an employer to

discharge, expel, or otherwise discriminate against any person because he has

opposed any practices forbidden under Chapter 151B or because he has filed a

Complaint, testified, or assisted in any proceeding alleging a violation of Chapter

151B.  In addition, §4(4A) makes it unlawful:

> ...for any person to coerce, intimidate, threaten, or interfere
> with another person in exercise or enjoyment of any right
> granted or protected by this chapter or to coerce, intimidate,
> threaten or interfere with such other person for having aided
> or encouraged any other person in the exercise or enjoyment of any
> such right granted or protected by this chapter.

 Kelley v. Plymouth County Sheriff's Department, 22 M.D.L.R. 208, 215 (2000),

citing, Bain v. Springfield, 424 Mass. 758, 765 (1997); Roy v. New England Steak

House, Inc., 2001 W.L. 1805191, *9 (MCAD).

28.    In order for Beliveau to establish a *prima facie* case of unlawful retaliation, he must show that 1) he was engaged in protected activity; 2) D'Agostino was aware he was engaged in protected activity; 3) D'Agostino subjected him to an adverse employment action; and 4) a causal connection existed between the protected activity, known by the D'Agostino, and the adverse employment action.  Morris v. Boston Edison Company, 942 F. Supp. 65, 68-69 (D. Mass. 1996); Ruffino v State Street Bank, 908 F. Supp. 1019, 1044 (D. Mass. 1995); Kelley v. Plymouth County Sheriff's Department, 22 M.D.L.R. 215; Langford v. Massachusetts Apartment of Employment and Training, 17 M.D.L.R. 1043, 1059 (1995); Roy v. New England Steak House, Inc., 2001 W.L. 1805191, *9 (MCAD). See also, Sellers v. Children's Study Home, 2002 W.L. 31318605, *13 (MCAD).

29.    If Beliveau is able to establish a *prima facie* case of retaliation, the burden of production shifts to D'Agostino to articulate and produce credible evidence to support a legitimate, non-discriminatory reason for its actions.  <u>Abramian v. President</u> <u>and Fellows of Harvard College</u>, 432 Mass. 107, 116-117 (2000).

30.    If D'Agostino meets this burden, then Beliveau must show by preponderance of the evidence that D'Agostino "acted with discriminatory intent, motive or state of mind." <u>Lipchitz v. Ratheon Company</u>, 434 Mass. 493 (2001).  However, Beliveau retains the ultimate burden of proving that D'Agostino's adverse action was as a result of retaliatory animus.  <u>Id.</u>  To prevail on his retaliation claim, you must find a causal link between the protected activity and the adverse action. <u>Bain v. City of Springfield</u>, 424 Mass. 758 (1997); <u>MacCormack v. Boston Edison Co.</u>, 423 Mass. 652 (1996). "The mere fact that one event followed another is not sufficient to make out a causal link." <u>Mole</u>, 442 Mass. at 592, quoting <u>MacCormack v. Boston Edison co.</u>, 423 Mass. 652, 662 n. 11, citing <u>Prader v. Leading Edge Prods., Inc.</u>, 39 Mass. App. Ct. 616 (1996).  That D'Agostino knew of the protected act and thereafter took some adverse action against Beliveau does not by itself establish causation.  <u>Id.</u>  "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file a discrimination complaint." <u>Id.</u> quoting,  <u>Mesnick v. General Elec. Co.</u>, supra at 828.

### Stoyle v. D'Agostino

31.      Stoyle also has a claim against D'Agostino for retaliation.  She claims that she was subjected to an adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination, and constructive discharge.  As with Beliveau, in order for Stoyle to establish a *prima facie* case of unlawful retaliation, she must show that 1) she was engaged in protected activity; 2) D'Agostino was aware she was engaged in protected activity; 3) D'Agostino subjected her to an adverse employment action; and 4) a causal connection existed between the protected activity, known by the D'Agostino, and the adverse employment action.

32.    Stoyle must show by preponderance of the evidence that D'Agostino acted with discriminatory intent, motive or state of mind. To prevail on her retaliation claim, you must find a causal link between the protected activity and the adverse action.

## Constructive Discharge

### Stoyle v. MMED and D'Agostino

33.    Stoyle claims that she was constructively discharged from her

employment with the MMED, specifically that she was forced to leave her job

due to intolerable working conditions that she claims included false statements

regarding her work performance, ongoing harassment and retaliation,

diminution of her status and responsibilities as Chief Financial Officer, threats of

disciplinary action, threats to retract her pay raise, and threats of termination.

Complaint at ¶¶ 97-99.  She claims that she suffered a material change in job

duties and rank tantamount to a constructive discharge.

34.     Constructive discharge occurs when an employer's conduct effectively forces an employee to resign against the employee's will.   In order to establish a claim involving constructive discharge, an employee must show that "the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  The test is met if the conditions under which the employee is expected to work, based on an objective assessment, are found to be so difficult as to be intolerable.  A single, isolated act of an employer usually will not be enough to support a constructive discharge claim.  Thus evidence of a single unfavorable performance review, or even of a demotion, is generally not sufficient to support a claim of constructive discharge. In order to amount to a constructive discharge, adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation will be deemed intolerable.  Loss of prestige, humiliation, and embarrassment do not amount to a constructive discharge unless extreme.

GTE Products Corp. v. Steward, 421 Mass. 22 (1995); Greenberg v. Union Camp Corp., 48 F. 3d 22 (1st. Cir. 1995); Kibbe v. Porter, 196 F. Supp.2d 48 (D.Mass. 2002).

**Wrongful Termination**

**Stoyle v. MMED and D'Agostino**

35.      Stoyle brings a claim for wrongful discharge against both MMED and D'Agostino.  In general, at-will employees such as Stoyle may be discharged for any reason or for no reason at all.  Wright v. Shriners Hospital, 412 Mass. 469, 472 (1992).   If you find that Stoyle was in fact constructively discharged as set forth above, in order to succeed on her wrongful termination claim, Stoyle must make a showing of some violation of public policy.  Phillips v. Youth Development Program, Inc.  390 Mass. 652, 657 (1983).   The public policy exception to the general rule permitting at-will terminations is narrowly construed to include only those terminations in which the employee is discharged for (1) doing something which the law requires, (2) refusing to do something which the law forbids, (3) asserting a legally guaranteed rights, (4) fulfilling a duty to assure the employer's compliance with laws involving public safety, (5) performing an important public deed which the legislature has clearly expressed a policy of encouraging, or (6) blowing the whistle on an employer's unlawful conduct. Flesner v. Technical Communications Corp.,  410 Mass. 805, 810-12 (1991); Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 555,(1988).

**Tortious Interference With Advantageous Relations**

**Beliveau v. D'Agostino**

36.    Beliveau brings a claim for tortious interference with advantageous relations against D'Agostino alleging that D'Agostino with improper motive and through the use of improper means, intentionally interfered with Beliveau's advantageous business relationship with the MMED.

37.     In order to prevail on his claim of interference with an advantageous relationship, Beliveau must prove that (1) he had an advantageous employment relationship with the MMED, (2) that D'Agostino knowingly induced his employer to break that relationship, (3) D'Agostino's interference, in addition to being intentional, was improper in motive or means; and (4) that he was harmed by D'Agostino's actions.

38.    Where the Defendant is a supervisor who, in the context of his employment is privileged to interfere with the employee's advantageous relationship, the Plaintiff must show, for the purposes of the third element, that the improper motive or means rose to the level of "actual malice" and was the "controlling factor" in the Defendant's interference. Weber v. Community Teamwork, Inc., 434 Mass. 761 (2001). "Actual malice," for purposes of a case alleging tortious interference by an employee's supervisor or another official of the employer's company who instigated the employee's firing, requires the demonstration by a preponderance of the evidence of a spiteful, malignant purpose, unrelated to the legitimate corporate interest, on the part of the individual alleged to have been responsible for effecting the firing. Wright v. Shriners Hosp. For Crippled Children, 412 Mass. 469 (   ); King v. Driscoll, 418 Mass. 576 (1994); Falcon v. Leger, 62 Mass.App.Ct. 352 (2004), review denied 443 Mass. 1102 (2004).

Here, because D'Agostino was Beliveau's supervisor, to prevail on his claim for the tortious interference with advantageous relations, Beliveau must show that D'Agostino's interference, in addition to being intentional, was improper in motive or means and that the improper motive or means rose to the level of actual malice and that D'Agostino's actual malice was the controlling factor in D'Agostino's interference.

**Stoyle v. D'Agostino**

39.     Stoyle also brings a claim for tortious interference with advantageous
relations against D'Agostino.  As D'Agostino was also Stoyle's supervisor, to
prevail on her claim against him, she will have to prove not only that D'Agostino
knowingly induced her employer to break the employment relationship and that
his interference in addition to being intentional was improper in motive and
means, but she also must prove that the improper motive or means alleged rose
to the level of actual malice and that D'Agostino's actual malice was the
controlling factor in D'Agostino's interference.

40.    Stoyle will have to prove that she was harmed by D'Agostino's interference.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-11329DPW

DR. JOHN J. BELIVEAU,            )
                                 )
          Plaintiff              )
VS.                              )
                                 )
TOWN OF MANSFIELD MUNICIPAL      )
ELECTRIC DEPARTMENT AND JOHN     )
D'AGOSTINO,                      )
                                 )
          Defendants             )

CONSOLIDATED WITH:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.:  05-10354DPW

KIMBERLY STOYLE,                 )
                                 )
          Plaintiff              )
VS.                              )
                                 )
THE MANSFIELD MUNICIPAL          )
ELECTRIC DEPARTMENT, JOHN        )
D'AGOSTINO, TOWN OF MANSFIELD)
BOARD OF LIGHT COMMISSIONERS, )
LOUIS AMORUSO, MICHAEL McCUE, )
DAVID McCARTER, DANIEL           )
DONOVAN, ROGER ACHILLE and       )
STEVEN MacCAFFRIE,               )
                                 )
          Defendants             )

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE CERTAIN TESTIMONY ABOUT INDIVIDUAL SELECTMEN AND BOARD OF LIGHT COMMISSIONERS

The Defendants hereby move in limine that the Plaintiffs be precluded

from introducing testimony or evidence about any of the individual Selectmen

and Board of Light Commissioners alleged criminal conduct or alleged visits to

1

entertainment facilities on the grounds that it has no probative value and is only intended to be prejudicial.

Respectfully submitted,
The Defendants,
By their attorneys,


/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO# 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100


Respectfully submitted,
The Defendants,
By their attorneys,


/s/ Susan Jacobs
Susan Jacobs, Esq.
VOLTERRA, GOLDBERG & JACOBS
Three Mill Street
Attleboro, MA 02703
(508) 222-1463

DATED: June 8, 2007