UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIMBERLY STOYLE,

          Plaintiff

v.

THE MANSFIELD MUNICIPAL ELECTRIC
DEPARTMENT, JOHN D'AGOSTINO,
THE TOWN OF MANSFIELD BOARD OF
LIGHT COMMISSIONERS, LOUIS AMORUSO,
MICHAEL McCUE, DAVID McCARTER,
DANIEL DONOVAN, ROGER ACHILLE
AND STEVEN MacCAFFRIE,

          Defendants

C.A. No. 05-10354-DPW

**CONSOLIDATED WITH
C.A. No. 04-11329-DPW**

DR. JOHN BELIVEAU,

          Plaintiff

v.

TOWN OF MANSFIELD MUNICIPAL
ELECTRIC DEPARTMENT, JOHN O.
D'AGOSTINO,

          Defendants

**PLAINTIFF KIMBERLY STOYLE'S
RESPONSIVE PROPOSED JURY INSTRUCTIONS**

Title VII - Retaliation
(Stoyle v. MMED, John D'Agostino
and Board of Light Commissioners)

1

1.  Kimberly Stoyle accuses the Town of Mansfield Municipal Electric Department, the Town
    Manager John D'Agostino and the Board of Light Commissioners (Individually and as
    Board members) of violating federal law by retaliating against her for engaging in protected
    activities; namely, for rejecting the sexual advances of the Town Manager, for complaining
    internally about sexual harassment and for filing a formal complaint with the
    Massachusetts Commission Against Discrimination. Complaining about and rebuffing
    sexual harassment is a "protected activity." 42 U.S.C. §2000e-3. To succeed on this claim,
    Ms. Stoyle must prove by a preponderance of the evidence that: (1) Defendants took
    adverse action against her; and (2) that her protected activity was a motivating factor in
    defendant's decision to take adverse employment action against her. Kearney v. Town of
    Wareham, 316 F.3d 18, 23 (1st Cir. 2002); Cariglia v. Hertz Equipment Rental Corp., 363
    F.3d 77 (1st Cir. 2004).

2.  Ms. Stoyle is not required to prove that her sexual harassment complaint had merit in order

to prove the retaliation claim.  Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252,

261-62 (1st Cir. 1999).

3.  To satisfy her burden of showing that she suffered an adverse action, the plaintiff has the burden of showing that the defendants subjected her to a personnel action that was in some way adverse.  In the employment context, such an adverse action might include the taking of something of consequence away from an employee; divesting an employee of certain responsibilities; demoting the employee; subjecting the employee to disadvantageous transfers or assignments, unwarranted negative job evaluations; and toleration of harassment by other employees.  White v. N.H. Dept. of Corrections, 221 F.3d 254, 261-262 (1ˢᵗ Cir. 2000).  See also Blackie v. Maine, 75 F.3d 716, 725 (1ˢᵗ Cir. 1996); DeNovellis v. Shalala, 124 F.3d 298, 306 (1ˢᵗ Cir. 1997); Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1ˢᵗ Cir. 1994).

4. An adverse action by a supervisor is an action of the employer. Foley v. Commonwealth Electric Co., 312, F.3d 517, 521 (1st Cir. 2002).

5.  "A hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action for purposes of Title VII. 42 U.S.C. § 2000e-3(a). An employer will be liable for discrimination if it tolerates severe or pervasive harassment motivated by the plaintiff's protected conduct. A hostile work environment is an intimidating, humiliating or sexually offensive work environment. Marrero v. Goya of P.R., Inc., 304 F.3d 7 (1st Cir. 2002); Noviello v. Town of Boston, 398 F.3d 76 (1st Cir. 2005).

6.  Former employees are also protected against retaliation.  Robinson v. Shell Oil Co., 519 U.S. 337 (1997).  Therefore, you may consider adverse action taken against Ms. Stoyle after her termination from employment.

7.  An employer is free to take action against an employee for any nondiscriminatory reason, even if its business judgment seems objectively unwise. Rodriguez Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 (1st Cir. 1999). But you may consider the believability of an explanation in determining whether it is a cover-up or pretext for discrimination. To prove that Ms. Stoyle's sexual harassment complaints and the rejection of sexual advances were a "motivating factor," Ms. Stoyle must show that defendants used that consideration in deciding to take adverse action against her. Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

8. Plaintiff need not show that her sexual harassment complaints and the rejection of sexual advances were the only reason defendants took adverse action against her, but she must show that defendants relied upon this in making their decision. 42 U.S.C. § 2000e-2(m) (2001); Fields v. Clark Univ., 966 F.2d 49, 52 (1ˢᵗ Cir. 1992) citing Price Waterhouse v. Hopkins, 490 U.S. 228, 242 (1989).

9.  If you find that Ms. Stoyle has not proven by a preponderance of the evidence that defendants used her protected activity in deciding to take adverse employment action against her, your verdict must be for the defendants. But if you find that Ms. Stoyle has proven by a preponderance of the evidence that her sexual harassment complaints and the rejection of sexual advances were a motivating factor in defendant's decision to take adverse action against her, then the burden of proof shifts to defendants to prove by a preponderance of the evidence that it would nevertheless have taken the same action even if it had not considered Ms. Stoyle's protected activity. Int'l Union, United Auto, Aerospace and Agric. Implement Workers v. Johnson Controls, Inc., 499 U.S. 187, 200-201 (1991).

10. Ms. Stoyle seeks to recover damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses. You may award compensatory damages if you determine that Ms. Stoyle has proven by a preponderance of the evidence that she has experienced any of these consequences as a result of retaliation by the defendants. No evidence of the monetary value of intangible things like emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation and other noneconomic losses is available, and there is no standard I can give you for fixing any compensation to be awarded for these injuries. Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on this element of damages. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, of the amount of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation and other noneconomic losses you find that Ms. Stoyle has undergone and can probably be expected to suffer in the future as a result of defendant's conduct. And you must place a monetary value on this, attempting to come to a conclusion that will be fair and just to both of the parties. This will be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.

11. If you have awarded compensatory damages, you may also award punitive damages to Ms. Stoyle under some circumstances. Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 237 (1st Cir. 2006). To obtain punitive damages, Ms. Stoyle must prove by a preponderance of the evidence that in taking adverse action against her or in tolerating harassment against her, defendants either knew that their actions violated federal law or acted with reckless or callous indifference to that risk. McKinnon v. Kwong Wah Rest., 83 F.3d 498, 507 (1st Cir. 1996); Dimarco-Zappa v. Cabanillas, 238 F.3d 25, 37 (1st Cir. 2001). If plaintiff satisfies this requirement, it is entirely up to you whether or not to award punitive damages. But it should be presumed that plaintiff has been made whole by compensatory damages, so you should award punitive damages only if defendant's culpability is so reprehensible as to warrant further sanctions to achieve punishment or deterrence. State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

12. If you decide to award punitive damages, the amount to be awarded is within your sound discretion. 42 U.S.C. §§ 1981 a(b)(3) and a(c)(2). The purpose of a punitive damage award is to punish defendants or deter defendants and others from similar conduct in the future. Factors you may consider include, but are not limited to, the nature of defendant's conduct (how reprehensible or blameworthy was it), the impact of that conduct on plaintiff, the ratio between the actual compensatory damages and the punitive damages, the relationship between plaintiff and defendants, the likelihood that defendants or others would repeat the conduct if the punitive award is not made, and any other circumstances shown by the evidence, including any mitigating or extenuating circumstances that bear on the size of such an award. Zimmerman v. Direct Federal Credit Union, 262 F.3d 70 (1st Cir. 2001). You may determine reprehensibility by considering whether the harm was physical as opposed to economic; whether the conduct showed indifference to or disregard for the health or safety of others; whether the target of the conduct has financial vulnerability; whether the conduct involved repeated actions or was an isolated instance; and whether the harm was the result of intentional malice, trickery, deceit, or mere accident. State Farm Mutual Auto ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

### M.G.L. c. 151B, §4(4) - Retaliation

### (Ms. Stoyle v. MMED and D'Agostino)

13. Ms. Stoyle also claims that the defendant retaliated against her in violation of G.L. c. 151B, § (4) because she rejected the advances of the Town Manager and because she complained that she was subjected to sexual harassment. Complaining to management or filing an internal complaint or formal legal complaint of discrimination triggers the protections of Title VII and c. 151B. To recover for retaliation, the plaintiff must prove to you by a preponderance of the evidence the following elements: (1) The plaintiff engaged in protected activity by complaining to management that it had unlawfully discriminated against her and/or coworkers; (2) the defendant was aware of these activities; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) but for the plaintiff's protected activity, the defendant would not have taken the adverse employment action against the plaintiff. Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 664 (2004); Bain v. City of Springfield, 424 Mass. 758, 764-65, 678 N.E.2d 155, 160 (1997); MacCormack v. Boston Edison Co., 423 Mass. 652, 662-63, 672 N.E.2d 1, 7 (1996); Wheelock Coll. v. MCAD, 371 Mass. 130, 138, 355 N.E.2d 309, 314-15 (1976); Ruffino v. State St. Bank & Trust Co., 908 F.Supp. 1019, 1044 (D. Mass. 1995).

14. Plaintiff need not show that her sexual harassment complaints and the rejection of sexual advances were the only reason defendants took adverse action against her, but she must show that defendants relied upon this or that this was a "motivating factor" in making their decision. Wynn & Wynn, P.C. v. MCAD, 431 Mass. 655 2000) citing Price Waterhouse v. Hopkins, 490 U.S. 228, 242 (1989).

15. If the plaintiff has proven to you that the defendant unlawfully discriminated against her, then you must decide the amount of damages, if any that will fairly compensate the plaintiff. The purpose of an award of compensatory damages is to make the plaintiff whole for all the losses that she has suffered because of the defendant's unlawful discrimination. The plaintiff bears the burden of proof on damages.

16. Emotional distress damages include mental pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the unlawful discrimination or retaliation, if you found such unlawful conduct to have occurred. The plaintiff must prove that the defendant's unlawful conduct caused her emotional distress. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages. Any award of emotional distress should be fair and reasonable, and proportionate to the distress suffered. Some factors that you should consider include the nature and character of the alleged harm; the severity of the harm; the length of time the plaintiff has suffered and reasonably expects to suffer; and whether the plaintiff has tried to mitigate the harm, for example by counseling. Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 576 (2004).

17. If you determine that the defendant's behavior toward the plaintiff was not merely intentional and offensive, but an outrageous affront to an individual's personal dignity that was both recklessly indifferent to the plaintiff's rights and egregiously beyond the pale of what our society tolerates in the workplace, then you may award punitive damages.  Bain v. Springfield, 424 Mass. 758, 769 (1997).

### M.G.L. c. 151B, §4(5) - Aiding and Abetting

### (Ms. Stoyle v. Town of Mansfield Board of Light Commissioners)

18. Ms. Stoyle has brought claims against the individual members of the Board of Light Commissioners (Individually and as Board Members) for aiding and abetting through their acts and omissions in failing to investigate and prevent continued known harassment and retaliation against her. It is unlawful for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the law which forbids sexual harassment or discrimination or to attempt to do so. G.L. c. 151B, § 4(5).

19. Any individual, including employees of the defendants and third parties, who actively perpetrates or assists another in acts prohibited by the law can be held separately liable as an aider and abettor. The standard for determining "aider and abettor" liability is: (1) The wrongful act must be separate and distinct from the underlying claim or an act in furtherance of the underlying claim; and (2) the aider and abettor shared an intent to discriminate not unlike that of the alleged principal offender; and (3) the aider and abettor knew of his or her supporting role in an enterprise that deprived an individual of a right guaranteed under M.G.L. c. 151B. Harmon v. Malden Hospital, 19 MDLR 157 (1997).

20. Inaction by an employee may, under certain circumstances, give rise to individual liability under the law. For liability to attach in this circumstance, the individual must: (1) have knowledge of ongoing sexual harassment; (2) have an obligation and the authority to investigate and/or take remedial action and (3) intentionally fail to take such action; and (4) contribute to the complainant's injury by failing to act. Morehouse v. Berkshire Gas Co., 989 F.Supp. 59 (D. Mass. 1994) (Posner, J.); Chapin v. Univ. of Mass., 977 F.Supp. 72, 78-80 (D.Mass. 1998) (Lindsay, J.).

42 U.S.C. 1983

**(Ms. Stoyle v. MMED and D'Agostino)**

21. Federal civil rights law, 42 U.S.C. § 1983, provides a remedy for individuals who have been deprived of constitutional or statutory rights by a person or entity acting under color of state law. This civil rights statute states in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . . 42 U.S.C. § 1983.

22. In order to prevail on a Section 1983 claim, the plaintiff must prove by a preponderance
    of evidence each of the following elements: (1) that the defendant was acting under color
    of law; and (2) that the defendant's conduct deprived the plaintiff of rights, privileges or
    immunities secured by the Constitution or laws of the United States. See Gutierrez-
    Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). See also Parratt v. Taylor, 451
    U.S. 527, 535 (1987); Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994); Martinez-Velez v.
    Simonet, 919 F.2d 808, 810 (1st Cir. 1990).

23. The first element of the plaintiff's claim is that the defendant acted under color of state law. In this context, the term "state law" means any statute, ordinance, regulation, or custom. The word "state" means a state or any political subdivision, such as a county or city, and also means any agency of a state, county, or city. You may find that the defendant acted under color of law if you find that he was clothed with the authority of the state or exercised power possessed by virtue of law. Action under color of law includes the misuse of power possessed by virtue of state law and made possible only because the defendant was clothed with the authority of state law. Thus, even if you find that the defendant acted in violation of state law, you may find that he acted under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Monroe v. Pape, 365 U.S. 167, 184 (1961); United States v. Classic, 313 U.S. 299, 326 (1941). See also Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125-26 (1st Cir. 1999).

24. A injury or damage is proximately caused by an act or failure to act whenever it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 569 (1st Cir. 1989)."

25.  To prevail on a §1983 claim based on a violation of her First Amendment rights, Ms.

Stoyle must show that her expression involved matters of public concern; (2) her interest

in commenting upon those matters outweighed the employer's interests in the efficient

performance of its public services; and (3) her protected speech was a substantial or

motivating factor in the adverse employment actions." Lewis v. City of Boston, 321, F.3d

207, 218 (1ˢᵗ Cir. 2003).

26. To determine whether Ms. Stoyle was speaking as a citizen upon matters of public concern, you must consider "the content, form and context of a given statement, as revealed by the whole record," with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and if so, whether the "form" of the employee's expression suggests a subjective intent to contribute to any such public disclosure. Connick v. Myers, 461 U.S. 138, 147 (1983). Ms. Stoyle claims that there is a public concern in the supervisory tolerance of a pattern of escalating harassment against a Chief Financial Officer for reporting financial irregularities that affect the ratepayers.

27. In order for you to find that the MMED liable to the plaintiff, you must find by a preponderance of the evidence that: (1) The action of John D'Agostino was done in accordance with a custom or policy of the MMED; and (2) that those actions caused the deprivation of the plaintiff's rights. Put another way, Ms. Stoyle must demonstrate by a preponderance of the evidence that through its deliberate conduct, the MMED was the moving force behind the injury alleged. Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 117 S.Ct. 1382 (1997); Bordanaro v. McLeod, 871 F.2d 1151, 1155 (1st Cir.), cert. denied sub nom. Everett v. Bordanaro, 493 U.S. 820 (1989); Kibbe v. Town of Springfield, 777 F.2d 801, 810 (1st Cir. 1985), cert. denied as improvidently granted, 480 U.S. 257 (1987).

28. Thus, the plaintiff must prove that the MMED caused the constitutional violation by showing the existence of a policy or custom and by showing a causal link between that policy or custom and the constitutional violation. Town of Canton, Ohio v. Harris, 489 U.S. 378 1989); Santiago v. Fenton, 891 F.2d 373, 381 (1989). See also Fletcher v. Town of Clinton, 196 F.3d 41, 55 (1st Cir. 1999). The phrase "custom or usage" appearing in Section 1983 means practices of MMED officials or employees that are permanent and well-settled; that is, the way things are done. Monell v. Town of New York Dep't of Social Servs., 436 U.S. 658, 691 (1978); Roma Constr. Co. v. Russo, 96 F.3d 566, 575 (1st Cir. 1996); Kibbe v. Town of Springfield, 777 F.2d 801, 806 (1st Cir. 1985), cert. dismissed as improvidently granted, 480 U.S. 257 (1987). Tedeschi v. Reardon, 5 F.Supp.2d 40, 47 (D.Mass. 1998).

29. Kimberly Stoyle alleges that John D'Agostino had a custom and practice of engaging in financial improprieties and misappropriating ratepayer funds. In order to find that the MMED is liable based upon custom or usage, you must find by a preponderance of the evidence that (1) the practice of the Town Manager was so well-settled and widespread that the policymaking officials of the MMED either knew or should have known of it but did nothing to end the practice and thereby implicitly authorized, approved of, or acquiesced to the practice; and (2) the custom or practice must have been the cause of and the moving force behind the deprivation of the plaintiff's civil rights. Roma Constr. Co. v. Russo, 96 F.3d 566, 575 (1st Cir. 1996); Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir.), cert. denied sub nom. Everett v. Bordanaro, 493 U.S. 820 (1989); Kibbe v. Town of Springfield, 777 F.2d 801, 810 (1st Cir. 1985), cert. dismissed as improvidently granted, 480 U.S. 257 (1987).

30. If the plaintiff is entitled to actual or compensatory damages, and if the defendant's conduct that caused actual injury or damage to the plaintiff was maliciously, wantonly, or oppressively done, you may award in addition to actual damages an amount you agree to be proper as punitive damages in order to punish the defendants for extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct. Smith v. Wade, 461 U.S. 30, 56 (1983); Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir. 1992); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 581 (1st Cir. 1989). See also Iacobucci v. Boulter, 193 F.3d 14, 25-26 (1st Cir. 1999).

31.  The defendant acted or failed to act maliciously if his conduct or inaction was prompted
     or accompanied by ill will, spite, or grudge, either toward the plaintiff.  Gutierrez
     Rodriguez v. Cartagena, 882 F.2d 553, 581 (1st Cir. 1989).  The defendants acted or failed
     to act wantonly if their conduct or inaction was done in reckless or callous disregard of, or
     indifference to, the rights of the plaintiff.  Gutierrez-Rodriguez v. Cartagena, 882 F.2d at
     58.  The defendants acted or failed to act oppressively if their conduct or inaction was
     done in a way or manner that injured or damaged the plaintiff or otherwise violated the
     plaintiff's rights with unnecessary harshness or severity, for example, by misuse or abuse of
     authority or power.  Gutierrez-Rodriguez v. Cartagena, 882 F.2d at 581.

32

## Intentional Infliction of Emotional Distress

### (Ms. Stoyle v. MMED and D'Agostino)

32. Stoyle brings a claim against D'Agostino and the MMED for the intentional infliction of emotional distress for conduct by D'Agostino both during and after her employment, including defendant's false accusations regarding her work performance, a continuing a pattern of harassment, diminishing her job duties as Chief Financial Officer, threats of disciplinary action, threatening to retract her pay raise and to terminate her employment, statements made by D'Agostino to the press as well as the filing of a counterclaim for conspiracy against Ms. Stoyle and Dr. Beliveau.

33. To prevail on her claim for the intentional infliction of emotional distress, Ms. Stoyle must prove by a preponderance of the evidence that: (1) D'Agostino intended to inflict emotional distress or he knew or should have known that emotional distress was likely to result from his conduct; (2) that D'Agostino's conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) that D'Agostino's conduct caused Stoyle emotional distress; and (4) that the emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure. Agis v. Howard Johnson Co., 371 Mass. 140 (1976); Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997); Payton v. Abbott Labs, 386 Mass. 540 (1982).

34

34. The defendant's conduct may be considered extreme and outrageous if it may be reasonably viewed as an attempt to intentionally shock and harm a person's peace of mind by invading that person's mental or emotional tranquility. Thus, if you find that the defendant engaged in conduct that in the totality of the circumstances was intended to, or a reasonable person should have known would, harm the plaintiff's peace of mind, then you may find that the defendant is liable for intentional infliction of emotional distress. Restatement of the Law, Second, Torts, § 46; George v. Jordan Marsh Co., 359 Mass. 244 (Mass. 1971).

35. The "extreme and outrageous conduct" element of the tort, may be made out on a showing of repeated harassment which may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress. Boyle v. Wenk, 378 Mass. 592, 595 (1979).

## Tortious Interference with Advantageous Relations

### (Ms. Stoyle v. D'Agostino)

36. Ms. Stoyle has a claim against John D'Agostino for tortious interference with advantageous relations. To establish a claim for tortious interference with advantageous relations, a plaintiff must show that (1) she had an employment relationship with her employer; (2) defendant knowingly interfered with that relationship; (3) in addition to being intentional, defendant's interference was improper in motive or means; and (4) plaintiff was harmed by defendant's actions. Weber v. Community Teamwork, Inc., 434 Mass. 761, 781, 752 N.E.2d 700 (2001); Sklar v. Beth Israel Deaconess Medical Center, 59 Mass.App.Ct. 550, 797 N.E.2d 381 (2003). Plaintiff does not need to prove that she had an existing employment contract in order to recover. Owen v. Williams, 322 Mass. 356, 77 N.E.2d 318 (1948).

37. Plaintiff must prove that defendant's interference was improper in motive or means. To be improper, interference need only arise from improper motive or the use of improper means. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20 (1990). A plaintiff need only offer evidence of either improper motive or improper means, not both. See Draghetti v. Chmielewski, 416 Mass. 808, 626 N.E.2d 862 (1994).

38. An improper motive includes an ulterior motive, such as wishing to do injury. See Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 578 N.E.2d 789 (1991). It also includes the motive of retaliation. See Draghetti v. Chmielewski, 416 Mass. 808, 626 N.E.2d 862 (1994). The use of improper means includes threats, misrepresenting facts, fabricating false claims and defamation. See Chakrabati v. Cohen, 31 F.3d 1 (1st Cir. 1994); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20 (1990).

39. "Actual malice" is determined by the defendant's state of mind -- i.e., whether the defendant had a "spiteful, malignant purpose . . ." Sklar v. Beth Israel Deaconess Medical Center, 59 Mass.App.Ct. 550, 797 N.E.2d 381, 385 (2003). Ill will or spite is proof of malice. See Boothby v. Texon, 414 Mass. 468, 608 N.E.2d 1028 (1993). There is also malice where the supervisor's acts are unrelated to any legitimate interest of the employer. The interest must be a legitimate one in order to avoid liability. See O'Brien v. New England Telephone, 422 Mass. 686, 664 N.E.2d 843 (1996); Boothby v. Texon, 414 Mass. 468, 608 N.E.2d 1028 (1993); Wright v. Shriners Hospital, 412 Mass. 469, 589 N.E.2d 1241 (1992).

40. Evidence of a spiteful purpose may not always be direct, and therefore actual malice "can be shown by the proof of facts from which a reasonable inference of malice may be drawn . . ." Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 664, 429 N.E.2d 21, 24 (1981). In order to succeed, a plaintiff must only demonstrate "a link between the defendant's conduct and evidence of a spiteful purpose or personal hostility." Sklar v. Beth Israel Deaconess Medical Center, 59 Mass.App.Ct. 550, 797 N.E.2d 381, 386 (2003).

### Constructive Discharge

### (Ms. Stoyle v. MMED and D'Agostino)

41. Stoyle claims that she was constructively discharged from her employment with the
MMED, specifically that she was forced to leave her job due to intolerable working
conditions that she claims included false statements regarding her work performance,
ongoing harassment and retaliation, diminution of her status and responsibilities as Chief
Financial Officer, threats of disciplinary action, threats to retract her pay raise and threats
of termination. Complaint at ¶¶ 97-99. She suffered a material change in job duties and
rank tantamount to a constructive discharge.

42. The kind of employer conduct that constitutes grounds for constructive termination falls into two broad categories, one that focuses on demotions and other loss of authority or status in executive and managerial positions and another that focuses on claims of intolerable working conditions. Rubin v. Household Commercial Fin. Servs., Inc., 51 Mass.App.Ct. 432, 441 (2001).

43. If an employee is engaged to fill a particular position, any material reduction in rank constitutes a breach of employment agreement and is tantamount to a constructive discharge. <u>Miller v. Winshall</u>, 9 Mass.App.Ct. 312 (1980). The fact that salary and benefits have not been decreased is not a conclusive factor. Applying the objective standard, you must consider the totality of the circumstances. <u>Ramos, et al. v. Davis & Geck, Inc., et al.</u>, 64 F. Supp. 2d 6, 8 (D.P.R. 1999).

44. You may also find that the plaintiff was constructively discharged if you are satisfied that the conditions in which the plaintiff would have been forced to work had she remained would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. First, you must consider whether the working conditions were, in fact, as the plaintiff has described them. If you find, by a preponderance of the evidence, that the conditions were as the plaintiff has described them, you must consider whether, based on an objective, or reasonable, assessment of those conditions, it could be found that they were so difficult as to be intolerable. Generally, there must be a continuous pattern of adverse working conditions before it can be found that conditions were sufficiently intolerable to amount to a constructive discharge. If you find that the plaintiff voluntarily resigned, and that her working conditions did not compel her resignation, then you must find that the plaintiff has not proved this element of her case. GTE Products Corp. v. Stewart, 421 Mass. 22, 34-35, 653 N.E.2d 161, 168-69 (1995); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 481 (1st Cir 1993); Aviles-Martinez v. Monroig, 963 F.2d 2, 6 (1st Cir. 1992); Alicea Rosado v. Garcia Santiago, 562 F.2d 1.14, 119 (1ˢᵗ Cir. 1977).

45

### Wrongful Discharge

### (Ms. Stoyle v. MMED and D'Agostino)

45. Stoyle brings a claim for wrongful discharge against both MMED and D'Agostino. If you find that Stoyle was in fact constructively discharged, as set forth above, in order to succeed on her wrongful termination claim, Stoyle must make a showing of some violation of public policy. Phillips v. Youth Development Program, Inc., 390 Mass. 652, 657 (1983). The public policy exception to the general rule permitting at-will terminations is narrowly construed to include only those terminations in which the employee is discharged for (1) doing something which the law requires; (2) refusing to do something which the law forbids; (3) asserting a legally guaranteed right; (4) fulfilling a duty to assure the employer's compliance with laws involving public safety; (5) performing an important public deed which the legislature has clearly expressed a policy of encouraging; or (6) blowing the whistle on an employer's unlawful conduct. Flesner v. Technical Communications Corp. 410 Mass. 805, 810-12 (1991); Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 555 (1988).

Respectfully submitted,

PLAINTIFF
Kimberly Stoyle
By her Attorney,


/s/ Lynn A. Leonard

_____

Lynn A. Leonard
Attorney At Law
527 Main Street, Suite 8
Melrose, MA  02176
(781) 662-6161
B.B.O. No. 561662

Dated:  June 12, 2007