UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY STOYLE,  )<br>           Plaintiff  )<br>  )<br>v.  )<br>  )<br>THE MANSFIELD MUNICIPAL ELECTRIC  )<br>DEPARTMENT, JOHN D'AGOSTINO,  )<br>THE TOWN OF MANSFIELD BOARD OF  )<br>LIGHT COMMISSIONERS, LOUIS AMORUSO,  )<br>MICHAEL McCUE, DAVID McCARTER,  )<br>DANIEL DONOVAN, ROGER ACHILLE  )<br>AND STEVEN MacCAFFRIE,  )<br>  )<br>           Defendants  ) | **C.A. No. 05-10354-DPW** |

**CONSOLIDATED WITH**

| | |
|---|---|
| DR. JOHN BELIVEAU,  )<br>           Plaintiff  )<br>  )<br>v.  )<br>  )<br>TOWN OF MANSFIELD MUNICIPAL  )<br>ELECTRIC DEPARTMENT, JOHN O.  )<br>D'AGOSTINO,  )<br>           Defendants  ) | **C.A. No. 04-11329-DPW** |

**PLAINTIFF KIMBERLY STOYLE'S OPPOSITION TO
DEFENDANTS' MOTION FOR DIRECTED VERDICT**

Plaintiff Kimberly Stoyle hereby opposes the Motion for Directed Verdict filed on

behalf of the Mansfield Municipal Electric Department ("MMED") and Town Manager

John O. D'Agostino ("D'Agostino"). Pursuant to Fed.R.Civ.P. 50 (a) (1)(A), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party." However, the standard makes clear that action taken under the rule is not an intrusion on any responsibility for factual determinations conferred on the jury. Advisory Committee Notes to Federal Rules of Civil Procedure, Fed.R.Civ.P. 50.

Plaintiff established a *prima facie* case of retaliation through sufficient evidence that: (1) She engaged in protected conduct; (2) she was subjected to adverse employment action; and (3) there was causal connection between first and second elements. Valentin-Almeyda v. Municipality of Aguadilla, 477 F.3d 85 (1st Cir. 2006). Protected conduct includes not only filing of administrative complaints, but also complaining to one's supervisors. Id. at 94. Thus, plaintiff's internal and formal legal complaints of sexual harassment and rejection of sexual advances constitute protected activities under Title VII[1], G.L. 151B[2] and G.L. c. 149.[3] Objecting to and refusing to participate in illegal financial practices and cooperating with a state ethics investigation are likewise protected activities under G.L. c. 149.[4]

An "adverse action" is one that would be materially adverse to a reasonable employee or job applicant. Burlington Northern & Santa Fe Railway Company v. Sheila White, 126 S.Ct. 2405, 2409, 2416 (2006). This requires a retaliation plaintiff to show that

---

[1] 42 U.S.C. §2000e-3.

[2] M.G.L. c. 151B, § (4).

[3] M.G.L. c. 149, §185 (b) (1), (2) and (3).

[4] Id.

the challenged action would dissuade a reasonable worker from making or supporting a charge of discrimination. Id. This is an objective standard. "Material" means significant, as opposed to trivial. Id. Moreover, "[t]he employer can effectively retaliate against an employee by taking actions not directly related to [her] employment or by causing harm outside the workplace." Id. at 2412.

Plaintiff presented ample documentary and testimonial evidence that D'Agostino took adverse action against her for engaging in protected activity.[5] An adverse action by a supervisor is an action of the employer MMED. Foley v. Commonwealth Electric Co., 312, F.3d 517, 521 (1st Cir. 2002). The evidence includes the following:

1. John D'Agostino was the Manager of the MMED with supervisory authority over its employees. (Testimony of Kimberly Stoyle and Jack Beliveau).

2. In June 1999, plaintiff questioned the legitimacy of a bill submitted by D'Agostino for treasurer's services in the amount of $150,000. Plaintiff believed that it was illegal to authorize payment for charges not legitimately incurred. D'Agostino assured plaintiff that the charges were representative of the treasurer's services. (Testimony of Kimberly Stoyle).

3. In August 1999, plaintiff rejected D'Agostino's sexual advances in a hotel room at a professional conference. (Testimony of Kimberly Stoyle).

4. In January 2000, plaintiff reported to her supervisor, Dr. Jack Beliveau, that D'Agostino sexually harassed another MMED employee, Carolyn Fitton.

---

[5] Plaintiff also presented evidence of adverse action by the Board of Light Commissioners, but notes that defendants' Motion is directed solely against the MMED and D'Agostino.

(Testimony of Kimberly Stoyle). Dr. Beliveau discussed this allegation with D'Agostino. (Testimony of Jack Beliveau).

5. In February 2000, plaintiff complained verbally and in writing to Dr. Beliveau that D'Agostino exerted his influence over the hiring of a financial assistant at MMED. During a meeting to discuss the hiring issue, D'Agostino criticized plaintiff's work performance and acted in a hostile manner toward her. (Ex. 12; Testimony of Kimberly Stoyle).

6. In June 2000, plaintiff again raised the issue of internal charges for treasurer's services in the amount of $133,000. Again, D'Agostino assured plaintiff that the charges were representative of the services rendered. (Ex. 279A; Testimony of Kimberly Stoyle).

7. In October 2000, D'Agostino sent plaintiff a sexually explicit email. (Ex. 16; Testimony of Kimberly Stoyle).

8. In December 2000, plaintiff reported to Dr. Beliveau that D'Agostino sexually harassed another Town employee. (Testimony of Kimberly Stoyle).

9. In March 2001, D'Agostino used vulgar language in a telephone call to plaintiff.

10. In June 2001, plaintiff solicited a quote from Century Bank to outsource the collection of electric bills. Century Bank quoted plaintiff a fee of $18,000 to perform the same services that the treasurer performed at an average yearly cost of approximately $140,000. During a discussion with Century Bank representatives on this issue, Mr. Boucher told plaintiff to "shut up" and that she "didn't know anything." Mr. D'Agostino was also present and acquiesced in Mr. Boucher's hostile treatment of plaintiff. (Ex. 265; Testimony of Kimberly Stoyle).

11. In October 2001, plaintiff and Dr. Beliveau reported to the Board of Light Commissioners Chairman Lou Amoruso that D'Agostino engaged in conduct that appeared to be sexual harassment against plaintiff and Carolyn Fitton. (Testimony of Kimberly Stoyle and Jack Beliveau).

12. In December 2001, plaintiff complained to Dr. Beliveau that D'Agostino leered at her and made an obscene gesture with his tongue at an MMED Christmas party. Plaintiff ignored D'Agostino at the party. (Testimony of Kimberly Stoyle).

13. In January 2002, D'Agostino attempted to rescind plaintiff's pay raise, which had been approved in December before the Christmas party. D'Agostino continued to question plaintiff's compensation and employment status for several months thereafter. He scrutinized her personnel file, singled her out regarding the approval process for prior pay raises and questioned her job title and the date of her job application. He also began referring to plaintiff as the Office Manager instead of the Chief Financial Officer. (Testimony of Kimberly Stoyle and Jack Beliveau).

14. In February 2002, plaintiff complained again to Dr. Beliveau and to Mr. Amoruso that D'Agostino's behavior created an escalating hostile work environment. (Ex77; Testimony of Kimberly Stoyle).

15. In April 2002, plaintiff expressed her belief that MMED was being overcharged by approximately $70,000 for pension costs. D'Agostino responded that "a broad plus a brain equals a problem." (Testimony of Kimberly Stoyle).

16. In June 2002, D'Agostino approved the overcharge to MMED for pension allocations. (Ex. 279C). At the same time, plaintiff suspected that the Town's bill to MMED for health insurance costs was also inflated. Plaintiff refused to pay the bill. In response to plaintiff's complaints regarding overcharges, D'Agostino told plaintiff

that if she cut her hair and got fat or became a hairdresser, someone might listen to her. (Testimony of Kimberly Stoyle and Jack Beliveau).

17. In August 2002, at a professional conference, D'Agostino whispered in plaintiff's ear that she "looked delicious." Plaintiff rebuffed his advance. (Testimony of Kimberly Stoyle).

18. In October 2002, D'Agostino began a series of contrived accusations against the plaintiff. He alleged that she authorized the installation of a purchase order software upgrade without prior approval from or coordination with the Town MIS manager. In fact, no such software upgrade had ever been installed. (Exs. 56, 60, 197; Testimony of Kimberly Stoyle).

19. In October 2002, plaintiff requested another meeting with Mr. Amoruso to discuss the continuing hostile environment that D'Agostino created. (Ex. 54). Plaintiff, Dr. Beliveau and Mr. Amoruso subsequently met at MMED offices. The focus of the discussion was sexual harassment and retaliation against plaintiff. (Testimony of Kimberly Stoyle and Jack Beliveau).

20. In October 2002, D'Agostino also requested information regarding telephone records from plaintiff and then purposely ignored and/or misconstrued all attempts by plaintiff to reasonably respond to his inquiry. (Ex. 60; Testimony of Kimberly Stoyle). In November 2002, he recommended that Dr. Beliveau take disciplinary action against plaintiff, despite that she had fully complied with his requests. (Ex. 60, Enclosure 9).

21. In December 2002, plaintiff filed a Charge of Discrimination with the MCAD in which she accused D'Agostino of gender-based harassment, sexual harassment and

retaliation. (Ex. 155). In January 2003, D'Agostino publicly threatened to sue employees as a result of plaintiff's charge. (Ex. 109).

22. In February 2003, the Town Treasurer and the Town Accountant issued a memorandum falsely accusing plaintiff of carrying a negative cash balance of over $1 million. (Ex. 68). Plaintiff believed these allegations were related to the filing of her MCAD complaint two months earlier. (Testimony of Kimberly Stoyle). As a result of the memorandum, Dr. Beliveau hired James Goulet to audit the financial accounts of MMED. (Testimony of Jack Beliveau).

23. Mr. Goulet requested copies of the Town audits for purposes of his investigation. (Ex. 79). D'Agostino delayed the production of documents requested by the auditor. (Ex. 76; Testimony of James Goulet).

24. In July 2003, plaintiff complained that the Town attempted to bill MMED for a portion of the Town's GIS Manager's salary, despite a prior vote that all GIS related charges would be covered in the payment in lieu of taxes. (Ex. 80; Testimony of Kimberly Stoyle).

25. In July 2003, plaintiff notified the Town Accountant that expenditures by Mr. D'Agostino on an MMED issued American Express card were unrelated to MMED business and therefore illegal. (Testimony of Kimberly Stoyle).

26. In August 2003, plaintiff was interviewed by the Ethics Commission regarding D'Agostino's influence over the hiring of a financial assistant. (Testimony of Kimberly Stoyle).

27. In August 2003, Dr. Beliveau notified the Board that sexual harassment and retaliation against plaintiff was ongoing. (Ex. 83)

28. In January 2004, D'Agostino rejected plaintiff's application to become a member of the Professional Union. Plaintiff successfully appealed the denial before the Massachusetts Labor Relations Commission. (Testimony of Kimberly Stoyle).

29. In May 2004, D'Agostino hired Gary Babin as the new MMED Director. Mr. Babin immediately diminished plaintiff's rank as Chief Financial Officer by eliminating her major job responsibilities. Plaintiff was excluded from all meetings, discussions and decisions concerning the financial operations of MMED. Mr. Babin reduced her financial report from fourteen pages to two pages and ordered plaintiff to sit in the audience at Board meetings rather than with the Board and other Town officials, as she had in the past. (Testimony of Kimberly Stoyle).

30. In June 2004, Mr. Boucher attended a Treasurer and Collector's Conference also attended by Brian Feeney of Century Bank. Regarding Dr. Beliveau's termination, Mr. Boucher reported to Feeney, "We got the director. "The bitch is next." (Ex. 110; Testimony of Kimberly Stoyle).

31. In June 2004, D'Agostino reinstated the Town's illegal practices of overcharging MMED for pension costs and GIS services. (Ex. 279E). The total internal services bill increased by approximately $300,000. (Exs. 279D and 279E). Plaintiff complained about the overcharges to Mr. Babin. (Testimony of Kimberly Stoyle).

32. Dr. Beliveau put plaintiff's concerns regarding financial improprieties in writing to D'Agostino and to the Board of Light Commissioners. (Exs. 10, 21, 25, 52, 80; Testimony of Kimberly Stoyle).

33. In June 2004, plaintiff discovered that Mr. Boucher was illegally borrowing money from MMED's Depreciation Fund. On November 7, 2002, the Town borrowed $800,000 without notice to MMED. On November 21, 2002, the Town borrowed

an additional $550,000.  Plaintiff believed that this was an illegal practice.  Plaintiff brought this to the attention of Mr. Babin.  (Ex. 61; Testimony of Kimberly Stoyle).

34. After the filing of plaintiff's MCAD complaint, Board of Light Commissioner Chairman Daniel Donovan reported to the Mansfield News that plaintiff's claims were fabricated before he ever saw the complaint.  The Board immediately voted to renew D'Agostino's contract, gave him a positive performance evaluation and a large pay raise.  The Board acted prior to the completion of an investigation into plaintiff's claims.  (Exs. 285, 72, 64, 109; Testimony of Daniel Donovan).

A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071 (1982).  Plaintiff rejected D'Agostino's sexual advances, complained about sexual harassment and objected to illegal financial practices.  D'Agostino had the authority to alter the terms and conditions of plaintiff's employment, and his retaliation against her escalated as plaintiff continued to complain.  D'Agostino subjected plaintiff to ongoing adverse employment action including negative evaluation of her work performance, threat to retract her pay raise, threat of disciplinary action and termination, diminution of her job duties, rejection of her union application and sexual/gender-based harassment.  The temporal nexus between plaintiff's protected activities and D'Agostino's adverse employment action gives rise to an inference of retaliatory motive.

Based upon the foregoing, defendants' Motion for Directed Verdict must be denied.

                                                        Respectfully submitted,

                                                        PLAINTIFF
Kimberly Stoyle
By her Attorney,


/s/ Lynn A. Leonard
_____

Lynn A. Leonard
Attorney At Law
527 Main Street, Suite 8
Melrose, MA  02176
(781) 662-6161
B.B.O. No. 561662

Dated:  July 25, 2007