UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 05-10354-DPW

| | |
|---|---|
| KIMBERLY STOYLE,<br>      Plaintiff | )<br>)<br>) |
| VS. | )<br>) |
| THE MANSFIELD MUNICIPAL<br>ELECTRIC DEPARTMENT, JOHN<br>D'AGOSTINO, TOWN OF MANSFIELD<br>BOARD OF LIGHT COMMISSIONERS,<br>LOUIS AMORUSO, MICHAEL MCCUE<br>DAVID MCCARTER, DANIEL<br>DONOVAN, ROGER ACHILLE, AND<br>STEVEN MACCAFFRIE,<br>      Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF,
KIMBERLY STOYLE'S, MOTION TO ENTER JUDGMENT AND
DEFENDANTS' MOTION TO REDUCE THE DAMAGES AWARDED**

After a Jury Trial and a verdict in favor of the Plaintiff, Kimberly Stoyle. against the Defendants, the Town of Mansfield Municipal Electric Department ("MMED") and John D'Agostino, the Plaintiff now files a Motion seeking to have the Court enter judgment against the Town of Mansfield, not a named Defendant in this matter, in the amounts of $300,000 for emotional distress damages and $600,000 for punitive damages, pre and post judgment interest as well as a yet to be determined amount of attorneys fees. The Defendants, the MMED and John D'Agostino oppose the Plaintiff's motion to have judgment entered against the Town and ask that this Court reduce the amount of compensatory damages to $50,000 and the amount of punitive damages to $50,000 and enter the Judgment against the MMED, not the Town of Mansfield. The Defendants base their requests on the grounds that the Plaintiff never named the Town of Mansfield as

1

a Defendant in this matter and only named the MMED. The applicable statute and case law make it clear that the MMED is a separate body politic from the Town.

In her Motion, the Plaintiff also seeks to have this Court treble the Jury award for Emotional Distress pursuant to General Laws, Chapter 149, § 185. However, the Plaintiff's request to treble her damages under that statute must also be denied because the Plaintiff did not seek and was not awarded any amount for lost wages. In fact, the Plaintiff dropped her constructive discharge claim just prior to Trial.

Finally, the Plaintiff seeks to have this Court award her punitive damages under General Laws, Chapter 151B, but as this Court and the Plaintiff are aware, the Plaintiff elected not to pursue her Chapter 151B claims against the MMED, but rather chose to pursue her claims under General Laws Chapter 149, § 185 and Title VII.

As further set forth below, the Defendants hereby request that this Honorable Court deny the Plaintiff's Motion to Enter Judgment Against the Town of Mansfield.[1]

**1.     Judgment should not enter against the Town of Mansfield.**

In her complaint and throughout Trial, the Plaintiff named as Defendant in this matter the Mansfield Municipal Electric Department, the MMED. At no

---

[1] The Defendants have not set forth here their opposition to the substance of the Jury's findings and reserve the right to do so once judgment has entered by the filing of a motion for judgment notwithstanding the verdict, request for remittitur as well as other post trial motions. In addition, the Defendants' motions for directed verdict at the close of the Plaintiff's case and at the close of all of the evidence are still outstanding.

time did the Plaintiff name the Town of Mansfield as a Defendant in this case or as a Respondent when this matter was pending before the Massachusetts Commission Against Discrimination. The only reason that the Plaintiff now seeks to have the Town of Mansfield replace the Defendant MMED is to avoid the damages cap of Title VII.  Such a substitution is not appropriate here, as the statute and case law make clear that the MMED is a separate entity from the Town.

Contrary to the Plaintiff's assertion, the case of DeRoche v. Massachusetts Commission Against Discrimination & Another, 447 Mass. 1, 11 (2006) is not similar to the case at hand and the Court in that case did not overrule its decision in Middleborough v. Middleborough Gas and Electric Dept., 422 Mass 583 (1996). In that case, the Court held that the electric department is an institution financially and distinct from the town to allow a suit by the town against it. The holding in DeRoche  is that a light department is a "public entity" within the meaning of the Massachusetts Tort Claims Act and for purposes of determining whether it is subject to an award of prejudgment interest on damages under General Laws, Chapter 151B.  In fact in DeRoche,  the Court addressed its holding in Middleborough v. Middleborough Gas and Electric Dep't, 422 Mass 583 (1996), and stated that "[o]ur conclusion today that the department is, nonetheless, a public entity in no way undermines what was said in the *Middleborough* decision. The department's independence from the town includes the power to contract on behalf of itself, to enter into collective bargaining agreements and to make its own employment decisions. It is a self-funded, profit making entity that sets its own budget and pays its own expenses from revenues

it generates and, unlike other town departments, does not depend on appropriations from the town." DeRoches, 447 Mass at 1204-1205. While the Court does go on to state that as a legal and practical matter, the department is a department of the town and, like the town, is a public entity, the Court in no way overrules its prior decision in *Marlborough*.

Here, the Plaintiff named only the Mansfield Municipal Light Department, her employer, as a Defendant and as a Respondent in her original Charge of Discrimination filed with the MCAD. The evidence introduced and in fact emphasized by the Plaintiff at Trial supports that the MMED is a separate and distinct entity from the Town. The Plaintiff was hired by and employed by the MMED, the employees of the MMED were subject to different pay scales than their counterparts in the Town, the Plaintiff made reports to the Board of Light Commissioners and participated in the meetings of the Board of Light Commissioners not the Board of Selectmen, and John D'Agostino was the Plaintiff's supervisor as the Manager of the MMED for which he received a separate stipend apart from compensation he received as Town Manager. The fact that the Plaintiff is paid by a Town issued check from MMED funds, not Town funds, is not sufficient to make the Town her employer. See, DeRoche, at 1205. Further, there was ample evidence that the MMED is a self-funded profit making entity that sets its own budget and pays its own expenses from revenues it generates. In fact, it was the transfer of some of MMED funds to the Town that formed the basis of the Plaintiff's whistleblower claim. It is wholly improper at this point to have the Town named as the Defendant in this matter simply to be able to breach the cap for damages set under Title VII.

Accordingly, the Defendants request that this Court deny the Plaintiff's Motion to Substitute the Defendant, MMED, with the Town of Mansfield and enter judgment against the Town. This Court should enter judgment against the named Defendant, MMED.

### 2.   The Plaintiff's award for emotional distress damages cannot be trebled under General Laws Chapter 149, § 185.

Next, the Plaintiff claims that she is entitled to treble damages under G.L. c. 149, § 185 because she construes the word "remuneration" in subsection (d) of that statute to include all compensatory damages including, her award of damages for emotional distress. A simple reading of the definitions contained in subsection (a) of the statute defeats the Plaintiff's claim as it is clear that "remuneration" does not include all "compensatory damages", but rather those damages associated with lost wages or benefits provided by an employer to an employee in exchange for services. Specifically, subsection (a)(2) of chapter 149, § 185, defines an "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration. G.L. c. 149, § 185(a)(2)(emphasis added). There is nothing in the statute to even suggest that the term remuneration as used in subsection (d) includes all compensatory damages including emotional distress damages that could be awarded by a jury, nor is there any case law to suggest the same. Rather, the plain language of the statute and the intent of the statute itself makes clear that the "remuneration" that is the subject of potential trebling by the Court in subsection (d) is remuneration given by an employer to an employee in exchange for services performed. The Plaintiff originally had a constructive discharge

claim, but elected to drop that claim just prior to Trial so that the Defendants could not inquire about the content of settlement discussions and her demand that Defendant D'Agostino be removed as Manager of the MMED.

Because the Plaintiff did not pursue her constructive discharge claim and made no claim for any amount for lost wages or benefits or other remuneration, she cannot now seek to convert her emotional distress damage award to an award for any such compensation for services rendered to the MMED. Accordingly, the Court does not have the discretion to treble the Jury award to the Plaintiff of $300,000 in emotional distress damages and the Plaintiff's request should be denied.

> 3. **The Plaintiff elected not to proceed on her Chapter 151B claim against the Mansfield Municipal Electric Department.**

The Plaintiff seeks to resurrect her Chapter 151B claim against the MMED in order avoid the Title VII cap on damages. The Plaintiff elected not to pursue her Chapter 151B against the MMED when questioned by this Court and elected instead to proceed under her claim brought pursuant to General Laws, Chapter 149, § 185 and her Title VII claims. Subsection (f) of Chapter 149, § 185 is clear, that the institution of a private action in accordance with subjection (d) of that chapter shall be deemed a waiver by the Plaintiff of the rights and remedies available to her for the actions of the employer under law, rule or regulation or under Common Law, G.L. c. 149, § 185(f). Accordingly the Plaintiff's other state court claims against the MMED including her Chapter 151B claims were waived by the Plaintiff when she pursued a private action under Chapter 149.

The Plaintiff did in fact waive her Chapter 151B claims when questioned by the Court at the hearing on the Defendants' Motion to Dismiss Beliveau's state court claims based on the exclusivity provision contained in Chapter 149 and elected to pursue her claims against the MMED under Chapter 149 rather than Chapter 151B. That intent was evident in discussions at hearings prior to trial and during discussions regarding the jury verdict slip. The only question left regarding Chapter 151B was whether the plaintiff was still seeking to pursue aiding and abetting claims against John D'Agostino and the individual members of the Board of Light Commissioners. By the end of the Trial, the Court determined that those claims were not supported by the evidence and thus were not even presented to the Jury. It is wholly inappropriate now to seek to resurrect these claims in order to circumvent the legislative decision to cap damage awards under Title VII.

Plaintiff seeks to circumvent the exclusivity provision by arguing that an "exclusivity" provision contained in Section 9 of Chapter 151B should apply. Apparently after six weeks of Trial, during which the Plaintiff focused on her alleged "protected activity" and her whistleblower claims, the Plaintiff now seeks to waive her claims under Chapter 149 in favor of her 151B claim which she had previously waived. As set forth above, an election was made by the Plaintiff to proceed with her claims against the MMED under Chapter 149 and Title VII. Whether a waiver was made or not, the Plaintiff misreads the statute as Chapter 151B does not contain a "exclusivity provision" such as that contained in Chapter 149, § 185. Rather Section 9 of Chapter 151B states that any law "inconsistent" to the provisions of Chapter 151B shall not apply and while the "administrative

procedure" is pending shall be exclusive. G.L. c. 151B, § 9. The Plaiintiff's MCAD claim is no longer pending because that agency found a lack of probable cause to credit her sexual harassment claims and dismissed her charge of discrimination. Later, the Plaintiff removed from the MCAD her retaliation claim brought pursuant to Chapter 151B.

The Plaintiff also cites a 1999 Superior Court case which discusses the exclusivity provision and construes language in that case to mean that she should be allowed to recover punitive damages under Chapter 151B. However, the Plaintiff waived that claim when she proceeded under Chapter 149. She is not entitled to a trebling of damages under Chapter 149 because she did not pursue a claim for lost wages. What the exclusivity provision addresses is that the Plaintiff cannot pursue different causes of action against her employer once she pursues a private action under the whistleblower statute.

### 4.     Defendants' Motion to Reduce Damages Awarded by the Jury

Title VII limits the amount of both compensatory and punitive damages available to plaintiffs. Those limits depend on the number of persons employed by the defendant organization. In this case, the testimony at this Trial has established that the MMED has 24 employees. Accordingly, the total damages, both compensatory and punitive, available to the Plaintiff pursuant to Title VII is limited to $50,000.

In this action, the Jury found the Defendants liable under both the Whistleblower statute and Title VII. However, the Jury did not delineate the damages awarded pursuant to the two theories. The Jury awarded $300,000

for emotional distress and $500,000 as punitive damages. The bulk of the Plaintiff's evidence centered on her claim of retaliation because she filed a Sexual Harassment complaint. She produced much less evidence of alleged retaliation for Whistleblowing. In light of that fact, this Court should rule that the bulk of the damages awarded by the jury related to the Title VII claims, not the whistleblower allegations. Therefore, this Court should reduce the total award substantially.

Title VII caps the entire award to be made to the Plaintiff, both compensatory and punitive, at $50,000. The Defendants urge this Court to reduce the award of compensatory damages awarded to the Plaintiff from $300,000 to $50,000 and to reduce the punitive damages award from $500,000 to $50,000. Under that formula, the Plaintiff would get the maximum amount of damages available for the central part of her case, the Title VII component and would receive an additional $50,000 for her Whistleblower case. In any event, since punitive damages are only allowable in this action pursuant to Title VII, it is clear that the punitive damages award cannot exceed $50,000.

## Conclusion

The Jury awarded the Plaintiff $300,000 in emotional distress damages and $500,000 in punitive damages against the Mansfield Municipal Electric Department (MMED) and John D'Agostino for a total award of $800,000. The Defendants ask that this Court reduce both the compensatory and punitive damages awards to an award of $50,000 in compensatory and $50,000 in punitive damages for a total of $100,000 in damages.

With regard to interest, only the emotional distress damage award is subject to prejudgment interest as punitive damages are not compensatory in nature and therefore prejudgment interest is not available. The Plaintiff has not submitted her attorneys' fees and costs so the Defendants cannot comment on those at this time.

                Respectfully submitted,
                The Defendants,
                By their attorneys,


                /s/ Leonard H. Kesten
                Leonard H. Kesten, BBO# 542042
                Deborah I. Ecker, BBO# 554623
                BRODY, HARDOON, PERKINS & KESTEN, LLP
                One Exeter Plaza
                Boston, MA 02116
                (617) 880-7100


                /s/ Susan Jacobs
                Susan Jacobs, Esq.
                VOLTERRA, GOLDBERG & JACOBS
                Three Mill Street
                Attleboro, MA 02703
                (508) 222-1463

DATED: