UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————
)
KIMBERLY STOYLE,                           )
                         Plaintiff          )
                                            )
v.                                          )
                                            )         C.A. No. 05-10354-DPW
THE MANSFIELD MUNICIPAL ELECTRIC           )
DEPARTMENT, JOHN D'AGOSTINO,               )
THE TOWN OF MANSFIELD BOARD OF             )
LIGHT COMMISSIONERS, LOUIS AMORUSO,        )
MICHAEL McCUE, DAVID McCARTER,             )
DANIEL DONOVAN, ROGER ACHILLE              )
AND STEVEN MacCAFFRIE,                     )
                                            )
                         Defendants         )
———————————————————————


## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR RECONSIDERATION


Now Comes the plaintiff, Kimberly Stoyle, and respectfully requests that this

Honorable Court deny Defendant's Motion for Reconsideration of the Judgment Awarding

the Plaintiff Punitive Damages Against John D'Agostino.  Defendant contends that the

Court made an error when it entered Judgment against John D'Agostino for $500,000 in

punitive damages, attorney's fees and costs.  Defendant argues that the Court's award was

impermissible on the basis that D'Agostino's name was omitted from the jury verdict slip

under the punitive damages section and that the Court cannot reassign punitive damages to

D'Agostino.  Defendant's argument must fail because it is within the Court's discretion to

resolve issues which should have been, but were not, covered by the jury verdict questions.[1] Fed. R. Civ. P. 49.  Furthermore, the Court instructed the jury, consistent with its Judgment, to consider D'Agostino's personal acts and that D'Agostino was effectively the MMED.  See Jury Instructions, Exhibit 2, pp. 9, 41-42.

Fed. R. Civ. P. 49 governs special verdict questions.  Pursuant to Rule 49(a)(3), "A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury."  However, Fed. R. Civ. P. 49(a)(3) also ensures that, if the submitted questions omit any material issue of fact, the district court may itself make a finding.  Anderson v. Cryovac, Inc., 862 F.2d 910 (1st Cir. 1988).  The rule invests the trial judge with extensive powers to resolve issues which should have been, but were not, covered by the interrogatories.  Id. at 916, quoting Goeken v. Kay, 751 F.2d 469, 474 (1st Cir. 1985) (in contract case, Rule 49(a) allowed district court to determine nature of contract for purpose of statue of frauds, where issue was omitted from jury interrogatories); Brenham v. Southern Pacific Company, 409 F.2d 1095 (5th Cir.), cert. denied, 409 U.S. 1061 (1972) (where negligence submitted to jury, but not proximate cause, district court could find causation using Rule 49(a).

"The right to have a jury find the further facts is not snatched from the litigants." To the contrary, the rule clearly admonishes parties that jury trial will be waived as to any issues not submitted, and the Court's Rule 49 findings of fact are treated in the same manner

---

[1] The jury verdict slip question asked:  "What sum of money, if any, do you award Kimberly Stoyle as punitive damages against the Mansfield Municipal Electric Department?"  See Jury Verdict Slip attached hereto as Exhibit 1, p. 7.

as findings of fact made after a bench trial.  <u>Id</u>. at 916.  The Court had an opportunity to

evaluate D'Agostino's conduct, as it would in a bench trial, and the discretion to award

$500,000 in punitive damages based upon the callous nature of the conduct and the harm to

the plaintiff.


"If the Court's account of the evidence is plausible in light of the record viewed in its

entirety, the court of appeals may not reverse it even though convinced that had it been

sitting as the trier of fact, it would have weighted the evidence differently.  Where there are

two permissible views of the evidence, the fact finder's choice between them cannot be

clearly erroneous."  <u>Id</u>. at 916.  Accordingly, this Court correctly and within its discretion

made a finding on the issue of punitive damages against D'Agostino under Rule 49(a)(3)

consistent with the evidence and the pleadings.  <u>See</u> <u>Kavanaugh v. Greenlee Tool Co</u>., 944

F.2d 7 (1st Cir. 1991).


Furthermore, the Judgment was consistent with the jury instructions.  The jury

instructions, which explained the jury verdict questions in detail, stated unambiguously that

there were two defendants, the MMED and John D'Agostino, and that the two defendants

were effectively one in the same:

> "Now, when I talk about defendants, you should understand that the fact that
> there are two defendants here is really not so important for your purposes.  Mr.
> D'Agostino is the person who ran the Municipal Electric Department and his
> acts, his own personal acts, are also the acts of the Municipal Electric
> Department."  Exhibit 2, p. 9.


> "For your purposes, we're dealing with two particular sets of defendants -- the
> corporate defendant, that is, the Municipal Light Department, and Mr.
> D'Agostino.  Mr. D'Agostino is effectively the Municipal Electric Light
> Department."  Exhibit 2, p. 41-42.

In contrast to the instruction regarding D'Agostino, the jury was never instructed that the Town of Mansfield Board of Light Commissioners and the MMED were the same or that the Board was a defendant.

Moreover, the jury instruction on punitive damages focused on the nature an individual's conduct, without reference to a single defendant.

> "There is one final point of damages, what's called punitive damages. And there is a -- not that it should distract you, but there's a lot of dispute in the law about punitive damages generally and how you define it and what it's supposed to do. But basically, it's there to provide punishment. That's what punitive means, punishment for someone who has acted with a kind of callous, severe disregard for the rights of other persons in this context. And what it's designed to do is what punishment generally is. In some ways, although the comparison isn't perfect, it's asking you to do what I do in criminal cases. What we're saying is that this is so severe, so callous, so fundamentally violative of society and society's norms that we think that there should be punishment" Exhibit 1, pp. 21-22.

The Court did not "reassign" the punitive damage award. Rather, the jury instructions permitted the jury to award punitive damages against either of two defendants, the MMED and D'Agostino. The punitive damage award reflects the jury's and the Court's assessment of D'Agostino's "personal acts." The Court properly exercised its discretion under Rule 49, presumably in the interests of justice, to harmonize the jury verdict slip and the jury instructions.

D'Agostino received fair notice of both the conduct that would subject him to penalty and the severity of the penalty when he was served with plaintiff's Complaint. He was named individually and liable for punitive damages under both G.L. 151B and 42 U.S.C. 1983. It was D'Agostino's burden to introduce evidence of his financial condition, if he intended to argue that the jury's award of punitive damages was excessive. Fishman v.

4

Clancy, 763 F.2d 485, 490 (1st Cir. 1996). D'Agostino never presented evidence of his financial status to the jury for consideration. Therefore, a request that the Court instruct the jury that it could consider his financial worth in assessing punitive damages would have been futile. D'Agostino cannot now claim to be prejudiced by his own omission.

WHEREFORE, plaintiff respectfully requests that this Honorable Court deny defendant's Motion for Reconsideration of the Judgment Awarding the Plaintiff Punitive Damages Against John D'Agostino.

Respectfully requested,

Kimberly Stoyle
By her Attorney

/s/ Lynn A. Leonard
_____
Lynn A. Leonard
Attorney At Law
527 Main Street, Suite 8
Melrose, MA  02176
(781) 662-6161
B.B.O. No. 561662

Dated:  October 5, 2007.

**CERTIFICATE OF SERVICE**

I, Lynn A. Leonard, hereby certify that I have served the foregoing Opposition upon all counsel of record by electronic filing service on October 5, 2007.


/s/ Lynn  A. Leonard
_____
Lynn A. Leonard

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DR. JOHN BELIVEAU,
    Plaintiff,

          v.

TOWN OF MANSFIELD MUNICIPAL
ELECTRIC DEPARTMENT AND
JOHN D'AGOSTINO,
    Defendants.

CIVIL ACTION NO.
04-11329-DPW

CONSOLIDATED WITH:

KIMBERLY STOYLE,
    Plaintiff,

          v.

TOWN OF MANSFIELD MUNICIPAL
ELECTRIC DEPARTMENT AND
JOHN D'AGOSTINO,
    Defendants.

CIVIL ACTION NO.
05-10354-DPW

## VERDICT

**I.  AS TO THE CLAIMS OF JOHN J. BELIVEAU**

**A.  LIABILITY**

1.   Was either (or both) of the following a motivating factor in the Defendants' decision to terminate John Beliveau:

a.  His support of Kimberly Stoyle's complaints to the Massachusetts Commission Against Discrimination?

Answer "YES" or "NO"       _YES_

b.    His filing of his own complaints with the Massachusetts Commission Against Discrimination?

Answer "YES" or "NO"                         *YES*

2.    Did John D'Agostino seek to intimidate John Beliveau for supporting Kimberly Stoyle's MCAD complaints when D'Agostino publicly stated that he would sue certain employees after Kimberly Stoyle filed such complaints?

Answer "YES" or "NO"                         *YES*

3.    Was any one (or more) of the following a motivating factor in the Defendants' decision to terminate John Beliveau?

a.    Beliveau's participation in the Ethics Commission investigation?

Answer "YES" or "NO"                         *NO*

b.    Beliveau's objection to retaliation against Kimberly Stoyle for her complaints of sexual harassment, based on his reasonable belief such retaliation against Stoyle was a violation of rule, regulation or statute?

Answer "YES" or "NO"                         *YES*

c.    Beliveau's objection to certain internal charges of the Town of Mansfield being charged to the Municipal Electric Department, based on his reasonable belief that such charges violated rule, regulation or statute?

Answer "YES" or "NO"                         *YES*

2

d.   Beliveau's objection to signing the vouchers for donations for oil and gas assistance, based on his reasonable belief that such vouchers violated rule, regulation or statute?

Answer "YES" or "NO"                    *NO*

4.   Did John D'Agostino intentionally inflict emotional distress on John Beliveau after his termination from employment on February 12, 2004?

Answer "YES" or "NO"                    *YES*

**If you have answered "YES" to one (or more) of Questions 1 through 4 in Section I.A. above, proceed to the remainder of the Questions.  Otherwise turn to the Questions in Section II.A. regarding the Claims of Kimberly Stoyle.**

**B.   BASIS FOR AND EFFECT OF RETALIATION CLAIM**

1.   Did John Beliveau file his complaints with the Massachusetts Commission Against Discrimination in bad faith?

Answer "YES" or "NO"                    *NO*

2.   Would the Defendants have terminated John Beliveau on February 12, 2004 even if he had not engaged in any one (or more) of the activities you have found to be motivating factors in response to Questions I.A.1 or Questions I.A.3?

**If your answer is "YES" to any one (or more) of such activities, answer by identifying the relevant Questions by subsection (e.g., I.A.1 (x) or I.A.3 (x)), otherwise answer "NO."**

*NO*

C.    **DAMAGES**

**If you have answered "YES" to any one (or more) of the Questions contained in Section I.A. above, please proceed to answer the following Questions.**

1.    What sum of money, if any, do you award John Beliveau as compensatory damages for

(**Answer Qustion I.C.1.a only if you answered "YES" to any one (or more) of Questions I.A.1 or I.A.3., otherwise turn to Question I.C.1.b.)**

a.    Lost wages and benefits: $ *255,000*

Answer in dollars or "None"

b.    Emotional Distress:    $ *150,000*

Answer in dollars or "None"

2.    What sum of money, if any, do you award John Beliveau as punitive damages against the Mansfield Municipal Electric Department?

$ *250,000*

Answer in dollars or "None"

4

## II.  AS TO CLAIMS OF KIMBERLY STOYLE

### A.  LIABILITY

1.    Was one (or more) of the following a motivating factor in a decision by the Defendants thereafter to take adverse employment action against Kimberly Stoyle?

a.    Her rejection of sexual advances by Mr. D'Agostino?

Answer "YES" or "NO"                         _____NO_____

b.    Her informal complaints to the Defendants regarding sexual harassment?

Answer "YES" or "NO"                         _____NO_____

c.    Her formal complaints to the Massachusetts Commission Against Discrimination?

Answer "YES" or "NO"                         _____YES_____

2.    Was any one or more of the following a motivating factor in a decision by the Defendants thereafter to take adverse employment action against Kimberly Stoyle?

a.    Stoyle's participation in the Ethics Commission investigation?

Answer "YES" or "NO"                         _____NO_____

b.    Stoyle's objection to certain internal charges of the Town of Mansfield being charged to the Municipal Electric Department, based on her reasonable belief that such charges violated rule, regulation or statute?

Answer "YES" or "NO"                         _____YES_____

5

c.    Stoyle's objection to withdrawals by the Town of Mansfield from the depreciation fund of the Municipal Electric Department based on her reasonable belief that such withdrawals were a violation of rule, regulation or statute?

Answer "YES" or "NO"                    *YES*

d.    Stoyle's complaints of sexual harassment based on her reasonable belief that such harassment was a violation of rule, regulation or statute?

Answer "YES" or "NO"                    *YES*

**If you have answered "YES" to one (or more) of Questions 1 and/or 2 in Section II.A. above, proceed to the remainder of the Questions, otherwise return your verdict.**

**B.    BASIS FOR AND EFFECT OF SEXUAL HARASSMENT AND RETALIATION CLAIM**

1.    Did Kimberly Stoyle file her complaints with the Massachusetts Commission Against Discrimination in bad faith?

Answer "YES" or "NO"                    *NO*

6

2.    Would the Defendants have engaged in the adverse employment actions against Kimberly Stoyle if she had not engaged in any one (or more) of the activities you have found to be motivating factors in response to Questions II.A.1 or Questions II.A.2?

**If your answer is "YES" to any one (or more) or such activities, answer by identifying the relevant Questions by subsection (e.g., II.A.a (x) or II.A.3 (x)), otherwise answer "NO."**

<u>       $N\,O$              </u>

## C.  DAMAGES

1.    What sum of money, if any, do you award Kimberly Stoyle as compensatory damages for Emotional Distress?

$\$ \underline{300,000}$

Answer in dollars or "None"

2.    What sum of money, if any, do you award Kimberly Stoyle as punitive damages against the Mansfield Municipal Electric Department?

$\$ \underline{500,000}$

Answer in dollars or "None"

<u>8/2/2007</u>
DATE

Carolyn Sanford
FOREPERSON

7

1

```
 1              UNITED STATES DISTRICT COURT

 2               DISTRICT OF MASSACHUSETTS

 3     * * * * * * * * * * * * * * *

 4     DR. JOHN J. BELIVEAU
                          Plaintiff
 5
           VERSUS                        CA-04-11329-DPW
 6
       TOWN OF MANSFIELD MUNICIPAL
 7     ELECTRIC DEPARTMENT AND
       JOHN D'AGOSTINO
 8
                          Defendants
 9
       * * * * * * * * * * * * * * *
10     KIMBERLY STOYLE

11                     Plaintiff

12         VERSUS                        CA-05-10354-DPW

13     THE MANSFIELD MUNICIPAL ELECTRIC

14     DEPARTMENT, JOHN D'AGOSTINO, ET AL

15     * * * * * * * * * * * * * * *

16          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

17           UNITED STATES DISTRICT COURT JUDGE

18      JURY TRIAL - DAY NINETEEN - JURY CHARGE EXCERPT

19                  AUGUST 1, 2007

20     APPEARANCES:

21     JULIANNE BALLIRO, ESQ. AND CHRISTINE MARIE GRIFFIN, ESQ.,
       Wolf, Block, Schorr & Solis-Cohen, LLP, One Boston Place,
22     40th Floor, Boston, Massachusetts  02108, on behalf of
       Dr. John H. Beliveau, Plaintiff in CA-04-11329-DPW
23
       LYNN A. LEONARD, ESQ., 527 Main Street, Suite 8, Melrose,
24     Massachusetts  02176, on behalf of Kimberly Stoyle,
       Plaintiff in CA-05-10354-DPW
25
```

2

1
    APPEARANCES (CONTINUED):
2
    LEONARD H. KESTEN, ESQ. AND DEBORAH I. ECKER, ESQ.,
3   Brody, Hardoon, Perkins & Kesten, One Exeter Plaza,
    12th Floor, Boston, Massachusetts  02116, on behalf
4   of the Defendants

5   SUSAN L. JACOBS, ESQ., Volterra, Goldberg, Mangiaratti &
    Jacobs, 3 Mill Street, Attleboro, Massachusetts  02703,
6   on behalf of Town of Mansfield Municipal Electric
    Department, Defendant
7

8

9

10

11

12

13

14

15

16

17
                              Courtroom No. 1 - 3rd Floor
18                            1 Courthouse Way
                              Boston, Massachusetts  02210
19                            9:10 A.M. - 4:10 P.M.

20

21

22          Pamela R. Owens - Official Court Reporter
            John Joseph Moakley District Courthouse
23            1 Courthouse Way - Suite 3200
               Boston, Massachusetts  02210
24

25

9

1    the part of Mr. Beliveau was a motivating factor in the

2    defendant's decision to terminate Mr. Beliveau.  You will

3    recall that I've used the phrase "adverse employment

4    action."  It becomes more difficult to explain -- or not more

5    difficult, but a little bit more complex in its edification

6    when we deal with Ms. Stoyle.  It's pretty easy to understand

7    what the adverse employment action that's being claimed up here

8    by Mr. Beliveau is.  They terminated him.  Now we want to know

9    what you think the reasons are and we are trying to narrow down

10   by asking you whether two particular reasons were motivating

11   factors -- that is, they caused the defendants here to take the

12   action.

13        Now, when I talk about the defendants, you should

14   understand that the fact that there are two defendants here is

15   really not so important for your purposes.  Mr. D'Agostino is

16   the person who ran Municipal Electric Department and his acts,

17   his own personal acts, are also the acts of the Municipal

18   Electric Department.  But there are two defendants here.  And

19   when it comes time for the legal principles to be applied, I'm

20   going to be dealing with some of the distinctions that needn't

21   distract you.

22        So, the first issue is was his support of Kimberly

23   Stoyle's complaints to the Massachusestts Commission Against

24   Discrimination a motivating factor?  Now, you can understand

25   that there can be a variety of factors that caused a particular

1    of humiliation.  There is no dollar figure that can be applied

2    for that.  It requires your good judgment about this, for you

3    to tell us what you think is an appropriate figure to address

4    that loss of life's basic experiences, the humiliation, if you

5    find it, the interference with the ability to do things that

6    you find gratifying, and impact on family and other aspects of

7    your life.  There is nothing that I know of, anyway, that can

8    provide you with some form of elusive and illusory arithmetic

9    formula here.  It is yet another reason why we have chosen you

10   as the jury to decide this and make your judgment.

11        Now I've gotten to all of these questions for

12   Mr. Beliveau, not because you may necessarily get to all of

13   those questions.  As you can see, you're not going to get to

14   the questions of damage if you don't answer certain questions

15   before positively.  But I mean to outline for you in the

16   broadest possible sense what the issues that you confront are.

17        There is one final point of damages, what's called

18   punitive damages.  And there is a -- not that it should

19   distract you, but there's a lot of dispute in the law about

20   punitive damages generally and how you define it and what it's

21   supposed to do.  But basically, it's there to provide

22   punishment.  That's what punitive means, punishment for someone

23   who has acted with a kind of callous, severe disregard for the

24   rights of other persons in this context.  And what it's

25   designed to do is what punishment generally is.  In some ways,

1   although the comparison isn't perfect, it's asking you to do

2   what I do in criminal cases.  What we're saying is that this is

3   so severe, so callous, so fundamentally violative of society

4   and society's norms that we think that there should be

5   punishment.  Now, you can find a violation in this setting of

6   various of the retaliation and not award punitive damages.  You

7   may say, "Well, you know, this is kind of the push and tug of

8   the employment environment.  Things like this happen.  We don't

9   find it to be so severe and fundamental."  But if you do,

10  you're entitled to award punitive damages.  And you'll consider

11  obviously the character and nature of the defendant's conduct;

12  the actual harm that was suffered by the plaintiff; the

13  magnitude of harm to other people if this kind of thing was

14  done.  And that's what we call general deterrence in the law.

15  Now, in the law, I don't punish somebody for somebody else's

16  potential harm later down the line.  But what I do try to do is

17  say what's an appropriate punishment that will tell other

18  people don't do this, an appropriate punishment for the

19  particular individual before me.  But it's got to be tethered

20  to that particular individual before me and the harm to that

21  particular individual before me.  And that's what you've got to

22  do in this setting.

23       When we say the relationship to the actual harm suffered

24  by the plaintiff, you understand that you don't award a

25  dollar's worth of compensatory damages and then two billion

41

1    protected action in this context.  You'll understand that

2    that's the link, the nexus that we've all been talking about in

3    this context.

4         The second issue that I want to focus you on a bit

5    concerns the role of the Board and the role of the Electric

6    Department and the role of Mr. D'Agostino.  You understand that

7    Mr. D'Agostino functions effectively as the Municipal Light

8    Department in these circumstances.  But you understand as well

9    that there are individuals who are involved with the Municipal

10   Light Department like the various members of the Board who can

11   take adverse employment action as well.  And the suggestion has

12   been made by Ms. Stoyle that one or another of them did that,

13   that certain of their actions constituted adverse employment

14   actions.  Certain of the things that they did and said in

15   relation to her work constituted adverse employment action.

16   For your purposes, we're dealing with two particular sets of

17   defendants -- the corporate defendant, that is, the Municipal

18   Light Department, and Mr. D'Agostino.  Mr. D'Agostino is

19   effectively the Municipal Electric Light Department.  What he

20   does is the acts of the Municipal Light Department, but there

21   may be other actors or somebody you decide who could have had

22   adverse employment -- engaged in adverse employment action with

23   respect to Ms. Stoyle.  And those are said to be the members

24   of -- certain members of the Board under certain circumstances

25   contributing in some fashion to the hostile work environment

1    that she says that she encountered.

2         There was one other.  Maybe, Ms. Balliro, if you could

3    just --

4              MS. BALLIRO:  There was a date.  In reference to

5    the date, Your Honor.

6              THE COURT:  But the particular --

7              MS. BALLIRO:  Question (2) on page three.

8              THE COURT:  Right.  Dates are important here.

9    Times are important.  And when you look at question (b)(2),

10   we're talking about would they have terminated Mr. Beliveau on

11   February 12, 2004, even if he had not engaged in any one of

12   those activities?  You understand there's testimony in the case

13   that they had some thoughts that they were going to terminate

14   him at some other point, at some earlier point in this case.

15   But now we're talking about this particular date, the date in

16   which they took that employment action.  That's what you're

17   focusing on to decide whether or not this is a motivating

18   factor that wouldn't have made a difference.  That is, if you

19   pulled it out, it wouldn't have made any difference, anyway.

20   They would have done it, anyway.  But you're looking at a

21   particular time.

22        Now, let me talk briefly about how you conduct your --

23   and I'm sensitive about the time here because I know one of

24   you, but I don't know who, has a particular time problem at

25   4 o'clock.  But I want to talk to you about how you conduct

43

1      your business when you start tomorrow morning at 9 o'clock and

2      no later than 9 o'clock, but as early as all of you arrive.

3

4                         END OF TRANSCRIPT EXCERPT

5

6                              CERTIFICATION

7              I certify that the foregoing is a correct

8      transcript of the record of proceedings in the above-entitled

9      matter to the best of my skill and ability.

10

11     /s/Pam Owens_____      _____

12     Pamela R. Owens                      Date

13     Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25