UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 05-10354-DPW

| | |
|---|---|
| KIMBERLY STOYLE, | ) |
|     Plaintiff | ) |
| | ) |
| VS. | ) |
| | ) |
| THE MANSFIELD MUNICIPAL | ) |
| ELECTRIC DEPARTMENT , JOHN | ) |
| D'AGOSTINO, TOWN OF MANSFIELD | ) |
| BOARD OF LIGHT COMMISSIONERS, | ) |
| LOUIS AMORUSO, MICHAEL MCCUE | ) |
| DAVID MCCARTER, DANIEL | ) |
| DONOVAN, ROGER ACHILLE, AND | ) |
| STEVEN MACCAFFRIE, | ) |
|     Defendants | ) |

**DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

**Introduction**

The Plaintiff brought this action against Defendants the Mansfield Municipal Electric Department, John D'Agostino, Town of Mansfield Board of Light Commissioners, Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven MacCaffrie alleging that she was retaliated against for having filed a sexual harassment complaint against John D'Agostino and for having engaged in so-called "whistleblowing" activities. In addition, the Plaintiff claimed that the Defendants retaliated against her in violation of her First Amendment rights. After trial, the jury returned a verdict in favor of the Plaintiff and against the Defendants Town of Mansfield Municipal Electric Department ("MMED") and John D'Agostino in the amount of $300,000 for emotional distress damages. The jury also awarded the Plaintiff punitive damages in the amount of $500,000 only against the MMED.

1

Following the verdict, the Plaintiff filed a Motion seeking to have the Court enter Judgment against the Town of Mansfield, not a named Defendant, in the amounts of $300,000 for emotional distress damages and $600,000 for punitive damages, pre and post judgment interest as well as attorneys' fees. The Plaintiff did not seek a judgment against Defendant John D'Agostino. The Defendants opposed the Plaintiff's motion to have judgment enter against the Town and asked the Court to reduce the amount of compensatory damages to $50,000 and the amount of punitive damages to $50,000 and enter Judgment against the MMED only.

On September 26, 2007, the Court entered Judgment for the Plaintiff. Specifically, the Court entered judgment for the Plaintiff and against the MMED for compensatory damages on the Plaintiff's claims brought pursuant to Title VII 42 U.S.C. § 1981a(b)(3), 42 U.S.C. § 1983 and M.G.L. c. 149, § 185(f). The Court entered judgment for the Plaintiff and against Defendant John D'Agostino on the Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and M.G.L. c. 151B. The Court entered judgment for compensatory damages in the amount of $300,000 against the MMED and John D'Agostino jointly and severally and entered judgment for punitive damages in the amount of $500,000 against John D'Agostino individually. Subsequently, Defendants filed a Motion for Reconsideration of that Judgment. Specifically, the Defendant John D'Agostino requested that the Court revise the Judgment to eliminate the $500,000 punitive damage award against him because the jury was not asked to and did not award punitive damages against him. That motion is still pending before the Court.

The Defendants now request that this Court enter judgment notwithstanding the verdict against them on all claims or order a new trial.

### I. The Defendants are Entitled to Judgment Notwithstanding the Verdict on all of the Plaintiff's Retaliation Claims

The Plaintiff, Kimberly Stoyle ("Stoyle"), brought this action based on two theories of liability, both premised on her claim that she was retaliated against by the Defendants for engaging in protected activities. The first theory put forth by Stoyle is that the Defendants retaliated against her because she filed a sexual harassment charge against them with the Massachusetts Commission Against Discrimination in December 2002. The second theory put forth by Stoyle is that the Defendants retaliated against her because she disclosed alleged financial improprieties. Stoyle also claimed that she was retaliated against because she rejected D'Agostino sexual advances and she complained about sexual harassment to Lou Amoruso. The jury rejected Stoyle's claims regarding D'Agostino's alleged sexual advances. Likewise, the jury rejected her claims that she complained to Amoruso about sexual harassment. The jury did find that Stoyle was retaliated against for her formal complaints to the Massachusetts Commission Against Discrimination and because she objected to certain internal charges and other alleged financial improprieties. The Court entered Judgment against the Defendants based the jury verdict pursuant to M.G.L. c. 149, § 185 and Title VII, 42 U.S.C. § 2000e-3(a). Under either theory of liability and pursuant to both statutes, to prevail Stoyle had to have proved that she engaged in protected conduct and that she was thereafter subjected to an adverse job action and also that there was a nexus between the protected conduct and the

adverse job action. Here, Stoyle clearly did not introduce sufficient evidence to support such findings.

Stoyle testified to only two adverse employment actions that she claims she incurred in retaliation for her filing her sexual harassment charge in December 2002 or in retaliation for her disclosing alleged financial improprieties.[1] The first adverse action she claims was taken in retaliation for her filing her charge of sexual harassment was a statement made by John D'Agostino to the press that the allegations being made by her were fabricated. She claims Selectman Dan Donovan made similar statements to the Mansfield News.[2]  See, *Plaintiff's Opposition to Defendants' Motion for Directed Verdict*. The only other adverse job actions she claims were actions taken by Gary Babin, who became the Director of the MMED in May 2004.  Stoyle claimed that Babin restructured her job because, under his management, he (rather than she) delivered the financial reports to the Board of Light Commissioners. Further, he decided that he would be the only MMED employee who would sit at the table with him at the Board of Light Commissioners meetings.  See *Plaintiff's Opposition to Defendants' Motion for Directed Verdict*.

First, this limited "restructuring" of her position could not reasonably be considered as an adverse employment action. Even if it could, Stoyle has failed to

---

[1] Stoyle alleged and testified to other alleged adverse actions that she claimed were taken in retaliation for her rejection of John D'Agostino's sexual advances and/or her alleged informal complaints, but the jury did not find that she was retaliated against for those alleged activities.  See Jury Verdict Form; also see, Stoyle's Opposition to Defendants' Motion for Directed Verdict responding to the Defendants' argument that she had not introduced any evidence that she had suffered from an adverse employment action.
[2] Stoyle also testified that statements were made by residents of the Town of Mansfield about her after she filed her Charge of Discrimination that caused her emotional distress. However, clearly neither MMED nor John D'Agostino can be found liable for statements made by residents of the Town.

introduce any evidence to prove a causal connection between Babin's management style and restructuring of her position and the protected conduct alleged. There was no evidence introduced by Stoyle that, Babin took any action against Stoyle in retaliation for her filing of a sexual harassment complaint against the Defendants prior to Babin's tenure with the MMED. Likewise, there was a complete absence of evidence introduced by Stoyle to show a nexus between Babin's actions and her alleged engagement in whistleblowing activity. Stoyle did not introduce any evidence that would support a finding that any action taken by Babin was motivated by discriminatory or illegal animus. Rather, the only evidence as to why Babin took the actions that he did was his own testimony as to his management style, i.e. how he preferred to have the MMED operate under his tenure. There was no evidence to link his management style to her retaliation claim. Accordingly, no reasonable finder of fact could find that the Defendants, through Babin or otherwise, "restructured" the MMED in retaliation for Stoyle's filing a Charge of Discrimination or because she engaged in whistleblower activity prior to his tenure at the MMED.

Because there was no direct evidence of retaliation in terms of Babin's restructuring of Stoyle's responsibilities, Stoyle had to present evidence that the reasons offered by Babin for reducing her responsibilities, i.e., not having her sit at the table at the meetings of the light commissions and not having her write as extensive reports, were pretext for discrimination. <u>Eliciano de la Cruz v. El Conquistador Resort and Country Club</u>, 218 F.3d 1 (1st Cir. Puerto Rico, 2000). Stoyle presented no evidence that Babin's stated reason for his limited restructuring was pretext for retaliation. Further, there was no evidence introduced that D'Agostino instructed Babin to reduce Stoyle's responsibilities

5

by restructuring the MMED or that the two ever even discussed any such restructuring. Certainly, Babin's independent decision to make the changes within the MMED would break any claimed causal connection between D'Agostino's alleged discriminatory animus and the adverse action complained of. Mole v. University of Massachusetts, 442 Mass. 583, 599 (2004).

Second, the one statement made by John D'Agostino to the press in his defense against Stoyle's sexual harassment claims against him and the one statement made by Dan Donovan that he believed Stoyle's sexual harassment claims were fabricated certainly cannot be considered as an adverse employment action, even under Title VII.[3] The Supreme Court recently held that the anti-retaliation provision protects an individual not from all retaliation but from retaliation that produces injury or harm. Burlington Northern & Sante Fe Railway Co. v. White, 126 S.Ct. 2405 (2006). In Burlington the Court opined:

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" [citation omitted]. We speak of *material* adversity because we believe it is important to separate significant from trivial harms ….The challenged action, however, still has to be materially adverse to a reasonable employee or applicant. The Plaintiff has to show that the challenged action might have dissuaded a reasonable person from making or supporting a charge of discrimination. Id.

Here, the Plaintiff is essentially relying on one statement to the press by Mr. D'Agostino immediately after she filed her Charge of Sexual Harassment against him as the basis for her claim that she suffered adverse action in retaliation for her filing of that Charge. One statement to the press denying the

---

[3] Notably, Stoyle's Charge of Sexual Harassment was dismissed by the MCAD for lack of probable cause and Stoyle did not bring a claim for sexual harassment against the Defendants when she filed her complaint in federal court.

6

charges and defending himself against her provocative allegations (which were not pursued by her in the end and which were never proven to be true) cannot be said to be materially adverse or to dissuade a reasonable person from making a charge of discrimination. Further, the MCAD later found that her allegations against Mr. D'Agostino did not rise to the level of sexual harassment. Ms. Stoyle's claim that she suffered an adverse employment action based on Mr. D'Agostino's statement must be assessed in terms of Mr. D'Agostino's right to defend against Ms. Stoyle's provocative allegations. Ms. Stoyle could not have expected that, once she or someone else, made her sexual harassment charge public that Mr. D'Agostino would not defend against the claims. Indeed, a person or entity accused of discrimination must be allowed to defend himself or herself. <u>Dixon v. International Brotherhood of Police Officers</u>, ___ **F.3d** ___, 2007 WL 2812118 (1st Cir. 2007), citing <u>Bain v. City of Springfield, 424 Mass. 758, 678 N.E.2d 155 (1997).</u> In <u>Bain,</u> a newspaper quoted the plaintiff's "serious and damaging" charges against the mayor. The Court held that the mayor was entitled to respond in the same forum to defend himself, stating that " [w]hat we most emphatically cannot countenance as an instance of retaliation is the mayor's response in the local newspaper to the charges against him … so long as they were not defamatory – which these were not." Id. at 766, 678 N.E.2d at 161. So, too, here, Mr. D'Agostino was entitled to respond to Stoyle's charges against him and his statements were not, nor were they alleged to be, defamatory. Such speech cannot form a basis for Stoyle's retaliation claim.

Likewise, the statement of Selectmen Dan Donovan, who was not found liable in this matter that, in his opinion, Stoyle's claims were fabricated does not

amount to adverse employment action and cannot bind the MMED or John D'Agostino.

In addition to the above, Stoyle did not prove that she engaged in protected activity when she filed her charge of discrimination in December 2002. The Defendants submit that no reasonable finder of fact could find that Ms. Stoyle had a good faith objectively reasonable belief that she was the subject of sexual harassment by Defendant D'Agostino when she filed her complaint. The evidence introduced clearly shows that the two central events that form the basis for her December 2002 sexual harassment complaint – the alleged hotel room incident in August 1999 and the "gerbil email" of October 2000 – occurred over two years before Stoyle filed her sexual harassment complaint and by her own admission were actions that never recurred. Allegedly staring in her direction during a conference and at a Christmas party and making the comment "you look delicious" cannot form the basis of a good faith objectively reasonable sexual harassment charge. Likewise, there was absolutely no evidence introduced by Stoyle which could support a finding that the alleged "fake questions" posed to her by D'Agostino including the questions involving the computer system, the phone records, the justification for pay raises and the damage to the automobile fender, were asked by him to retaliate against her for rebuffing his alleged non verbal sexual "advances" as Stoyle alleges. She did not present any evidence to raise even an inference of a causal connection.

Indeed, this jury rejected her claim that she was retaliated against because of the alleged sexual advances of D'Agostino. Likewise, this jury rejected her claim that she was retaliated against because of her alleged "informal" complaints about sexual harassment to Lou Amoruso. The filing of a charge of

discrimination alone does not amount to protected activity. Rather, for the activity to be protected and to form the basis of a retaliation claim, Stoyle must have had a good faith, objectively reasonable belief that D'Agostino was sexually harassing her at the time she filed her complaint.  Here, no reasonable finder of fact can find that she had such a good faith reasonable belief and accordingly, the court should direct a verdict for the Defendants and against the Plaintiff, Kimberly Stoyle.

## II.     The Defendants are entitled to Judgment Notwithstanding the Verdict on the Plaintiff's claims brought pursuant to 42 U.S.C. § 1983

The Plaintiff brought claims pursuant to 42 U.S.C. § 1983 alleging that the Defendants retaliated against her in violation of her First Amendment rights for complaining about illegal hiring practices and the misappropriation of public funds.  The Court did not instruct the jury as to what the Plaintiff was required to prove to prevail on her First Amendment claims or claims brought pursuant to 42 U.S.C. § 1983. Regardless, the Plaintiff cannot prevail on this theory.

Public employees who make statements pursuant to their official duties are not speaking as citizens for First Amendment purposes and the United States Constitution does not insulate their communications from employer discipline if such discipline was in fact imposed on the Plaintiff, which the Defendants deny. Garcetti v. Ceballos, 126 S.Ct. 1951 (2006).  While Courts have made clear that public employees do not surrender all of their First Amendment rights by reason of their employment, the First Amendment protects a public employee's rights in certain circumstances to speak as a citizen addressing matters of public concerns. Id. at 1957, citing Pickering v. Board of Ed. of Township High School Dist. 205, 391 U. s. 563, 88 S.Ct**. 1731 (    )**. Pickering identified two inquiries to guide

9

interpretation of the constitutional protections accorded to a public employee's speech. First, it requires determining whether the employee spoke as a citizen on a matter of public concern. Id., at 1985. If the answer is no, the employee has no First Amendment claim. Id. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. Id., citing Pickering at 391 U.S. 569, 88 S.Ct. 1731.

In this case, there is no need to reach this second inquiry as Stoyle clearly was not speaking as a citizen on matters of public concern, but rather was making statements to the Board of Light Commissioners and the Board of Selectmen as part of her official duties. Stoyle's statements to the Board of Light Commissioner and the MMED manager were made in her role as an employee of the MMED not as a private citizen. Accordingly, the judgment entered against MMED and John D'Agostino on the Plaintiff's First Amendment claims brought pursuant to 42 U.S.C. § 1983, must be reversed and judgment entered in favor of the Defendants.

### III. The Award of Punitive Damages Against John D'Agostino Should be Vacated.

Finally, Defendant John D'Agostino is entitled to have the award of punitive damages against him in the amount of $500,000 vacated on the grounds that the jury awarded punitive damages only as against the MMED not as against John D'Agostino. Punitive damages are awarded or rejected in a particular case at the discretion of the fact-finder, in this instance the jury. See Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir. 1970). There is no

vested right to punitive damages on the part of a plaintiff and, where allowed, they are awarded as a matter of public policy to punish outrageous conduct by the defendant or to deter similar conduct in the future.  See <u>Smith v. Wade</u>, 461 U.S. 30, 52, 103 S. Ct. 1625, 1638, 75 L.Ed.2d 632 (1983).  Punitive damages are imposed "in order to punish the wrongdoer for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct." <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 581 (1st Cir. 1989).   They are allowed only with caution. <u>Lee</u>, 429 F.2d at 294; <u>Aladdin Manufacturing Co. v. Mantle Lamp Co.</u>, 116 F.2d 708, 717 (7th Cir. 1941).

      The allowance of such damages inherently involves an evaluation of the nature of the defendant's conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent.  Therefore, "the infliction of such damages, and the amount thereof are of necessity within the discretion of the trier of the fact." <u>Lee</u>, 429 F.2d at 294.  That is, if a plaintiff proves sufficiently serious misconduct on a defendant's part, the question whether to award punitive damages is left to the jury, which may or may not make such an award.  D. Dobbs, <u>Law of Remedies</u> 204 (1973); <u>Smith v. Wade</u>, 461 U.S. at 52.

      Here, the jury was asked to consider and assess punitive damages solely against the Defendant MMED. The jury heard evidence of actions taken as to Ms. Stoyle by multiple individuals who acted on behalf of the MMED, not only Defendant D'Agostino.

      The jury could have been asked to consider awarding punitive damages as to all of the persons who she claimed wronged her, such as the members of the Board of Light Commissions as well as John D'Agostino individually.  However,

the plaintiff chose not to pursue punitive damages against <u>any</u> individuals and only pursued punitive damages against the MMED. Thus, the jury was never asked to consider whether some form of pecuniary punishment or deterrent was warranted against Defendant D'Agostino individually.[4]

As noted above, the infliction of punitive damages was strictly within the purview of the jury. There can be no award of such damages against a Defendant in the absence of jury consideration of the same. Punitive damages cannot be imposed *sua sponte* post-trial and, certainly, a jury's consideration and award of punitive damages expressly against one Defendant cannot simply be reassigned by the Court over to another defendant after the fact. The principles of fundamental fairness, "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty" that may be imposed. Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 81 (1st Cir. 2001).

Here, after the jury awarded punitive damages only against the Defendant MMED, the Court entered judgment containing a punitive damages award against defendant D'Agostino individually. In the absence of a jury consideration and award of the same against Defendant D'Agostino, the Defendants submit that the $500,000.00 punitive damages award against him is impermissible and should be vacated.

## CONCLUSION

---

[4] It goes without saying then that the jury was never instructed on punitive damages in terms that might be relevant to defendant D'Agostino (as opposed to, say, an employer entity), including for example, that the jury could consider D'Agostino's financial worth in assessing punitive damages. See Acevedo-Luis v. Pagan, 478 F.3d 35 (1st Cir. 2007) (it was entirely proper to instruct the jury that it could consider the defendant's financial worth in assessing punitive damages).

For all of the foregoing reasons, the Defendants respectfully request that this Honorable Court grant the Defendants' Motion for Judgment Notwithstanding the Verdict or, in the alternative, grant the Defendants' Request for a New Trial.

        Respectfully submitted,
        The Defendants,
        By their attorneys,


        /s/ Leonard H. Kesten
        Leonard H. Kesten, BBO# 542042
        Deborah I. Ecker, BBO# 554623
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        One Exeter Plaza
        Boston, MA 02116
        (617) 880-7100


        /s/ Susan Jacobs
        Susan Jacobs, Esq.
        VOLTERRA, GOLDBERG & JACOBS
        Three Mill Street
        Attleboro, MA 02703
        (508) 222-1463

Dated:  October 9, 2007